Revised August 20, 1998

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 96-30489
_____

JAMES E. ALLISON; RAY ANDERSON;
JOANNE ANDREPONT; RAYMOND ARTIS;
JOSEPH AUSTIN; CHARLES AVERY;
RONALD BALLOU; LEROY BALLOU; DANIEL
BARRON; ARNOLD BATISTE; REGINALD BILBO;
DAVID L. BLANEY; ALEX BROUSSARD;
CALVIN BROUSSARD; NORTHERN BROWN;
SANDRA BROWN; SOLOMON BUTLER; JESSE L.
CARMEN; CHARLES CARRIER; JUNIUS CARTER;
DONALD CEASAR; AUDREY T. CELESTINE;
ANTHONY CHAMPAGE; REID CHAMPMAN; JAQUELINE
CLEMONS; LEONARD COLE; GLENNETH COLEMAN;
LESTER COLEMAN; CLEVELAND J. COLLINS;
LARRY A. COMBEST; LYNETTE CORMIER; GEORGE
DARBONNE; PATRICIA DARBONNE; XAVIER DARBONNE;
WILLIE DEJEAN; LOUIS A DUDLEY; JOSEPH DUGAR;
LONEY M. DUGAR; CHARLES ELLIS; PETER EVANS;
CLYDE FELIX; CHARLES FOBB, JR.; CLINTON
FOBBS, JR; GILBERT FOOTE; HOWARD DEE FOREMAN;
VELMA M. GALLIEN; RAY A. GARLAND; MCARTHUR
GILLIAM; PAUL GOODWIN; MARION R. GREENE;
SHELTON GUILLORY; WILTON GUILLORY; WILLIE RAY
HAMILTON; DONALD HARRIS; EDWINA M. HARRIS;
SILVER RAY HARRIS; RAY HARRIS; DONALD HARRISON;
HENRY G. HAWKINS; HELEN G. HENRY; WILLIE IRVING;
DONALD D. JACKSON; JACK JOHNSON; SAMUEL JOHNSON;
LAWRENCE JONES; EDWARD JORDAN; HORACE J. LAMBERT;
ANGEL LEBLANC; ALBERT LEDAY, JR.; CLIFFORD LEDAY;
ARTHUR K. LEE; EARL J. LEMELL; JOSEPH LEMELL, JR.;
WILBERT J. LEWIS; HAROLD J. LOCKETT; KATHLEEN V.
MANUEAL; PAUL D. MATTHEWS; AUBREY MATTHEWS;
CHARLET L. MCCAIN; LOUIS E. METOYER; WESLEY J.
MONROE; MELVIN MOREAU; MARK A. MOTT; WILLIE MOUTON;
JOSEPH LARRY NELSON; MOSES NELSON; HERBERT L.
OLIVER; EDWARD OLIVER; MARK H. PAPPION;
CORNELIUS PAPPION; FREDERICK PERRODIN; JOSEPH
PERRON, JR.; AUGUST PETE; DARRELL PETE; GUSSIE
PITRE; PATRICIA PITRE; GEORGE POLK, JR; LINTON

POULLARD, JR.; JOSEPH PRUDHOMME; LARRY
PRUDHOMME, JR.; HARVEY C. PULLARD; CHARLES W.
RAWL; FREDERICK RIDEAUX; JOSEPH A. RILEY;
VIRGINIA RILEY; NANCY RYAN; NATHANIEL H. SAPP;
LOUIS SEMIEN, JR.; CHESTER SENEGAL; JOSEPH
SENIEN, JR.; JESSIE L. SHAW; HOWARD W. SHERMAN;
WANDA F. SMITH; GEORGE STENSON; GERALD STERLING;
RICHARD STERLING; CHARLES A. TALBERT; PATRICIA
TAYLOR; GEORGE E. TAYLOR; MARTIN THOMAS;
WARREN G. THOMAS; DONALD THOMPSON; HUEY P.
TOLSTON; ELRAY VICTORIAN; SHEILA WARD; CYNTHIA
WASHINGTON; VICTOR WASHINGTON; WARREN
WASHINGTON; WILSON WASHINGTON; HUEY WILLIAM;
WILBERT WILLIAMS; ERROL WILSON; ARMOND WYATT,

                                    Plaintiffs-Appellants,

JONATHAN ANDERSON; DANIEL COX; RUSSELL
METOYER; HILLERY RANDELL; LEO P. REEDER,

                                    Intervenors Plaintiffs-Appellants,

                          versus

CITGO PETROLEUM CORP.,

                                    Defendant-Appellee.
_____

Appeal from the United States District Court for the
            Western District of Louisiana

_____
                    August 18, 1998


Before JOLLY, SMITH, and DENNIS, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

    This interlocutory appeal presents the question whether the
district court properly refused to certify a class action
challenging employment practices by the Citgo Petroleum Corporation

_____

On May 15, 1998, the panel issued its opinion in this case. The earlier opinion is withdrawn and this opinion is substituted therefor. The primary modifications from the previous opinion appear in Part VII of this substituted opinion.

("Citgo") under Title VII (as amended in 1991) and the Civil Rights Act of 1866, 42 U.S.C. § 1981. The plaintiffs, Allison and over 130 other named plaintiffs and intervenors, filed suit on behalf of black employees and applicants for employment alleging that Citgo engaged in class-wide racial discrimination with respect to general hiring, promotion, compensation, and training policies at its manufacturing facilities in Lake Charles, Louisiana. The plaintiffs challenged these policies under disparate impact and systemic disparate treatment theories of discrimination. Seeking injunctive, declaratory, and monetary relief, the plaintiffs moved for class certification under Rule 23 of the Federal Rules of Civil Procedure, which Citgo opposed. The district court denied the motion. On appeal, the plaintiffs contend that the district court's denial of class certification was an abuse of discretion. Before the passage of the Civil Rights Act of 1991, which for the first time provided plaintiffs with a right to compensatory and punitive damages as well as a jury trial (each demanded here), aspects of this case clearly would have qualified for class certification. As we shall explain, however, the plaintiffs' claims for money damages and the constitutional right of both

parties to a jury trial, with all its substantive rights and procedural complications, ultimately render this case unsuitable for class certification under Rule 23. We therefore affirm and hold that the district court did not abuse its discretion in denying class certification.

4

This race discrimination case involves a potentially huge and wide-ranging class action lawsuit concerning employment practices at Citgo's Lake Charles manufacturing complex. Specifically, the plaintiffs identified the following employment practices as resulting in unlawful race discrimination: (1) failure to post or announce job vacancies; (2) use of an informal word-of-mouth announcement process for filling job vacancies; (3) use of racially biased tests to evaluate candidates for hire or promotion; and (4) use of a subjective decision-making process by a predominantly white supervisory staff in reviewing applicants for hire and employees for promotion. The plaintiffs challenged each of these policies under both the disparate impact and systemic disparate treatment theories of Title VII.

In September 1993, the plaintiffs filed a motion for the certification of a class estimated to contain more than 1000 potential members. The class was identified as "[a]ll African-American employees and applicants of Citgo Petroleum Corporation (Citgo) from April 11, 1979 until the present." Its members are current and former employees and unsuccessful applicants for employment in "hourly" positions at Citgo's Lake Charles complex. They are spread across two separate facilities. They are represented by six different unions, come from five different skill

groups, and work in seven different functional areas at the complex. Nevertheless, the plaintiffs maintain that a class action is appropriate because they are challenging general hiring, training, and promotional policies applied uniformly throughout the complex.

To remedy the alleged discrimination, the plaintiffs seek every available form of injunctive, declaratory, and monetary relief. In terms of affirmative injunctive relief, the plaintiffs seek restructuring of offending policies, instatement into existing jobs, and retroactive seniority and benefits. As for monetary relief traditionally available under Title VII, the plaintiffs request back pay, front pay, pre-judgment interest, and attorneys' fees. Furthermore, invoking the provisions added to Title VII by the Civil Rights Act of 1991, the plaintiffs seek compensatory and punitive damages to the maximum amount permissible under the law. Finally, the plaintiffs demand a jury trial on their claims of intentional discrimination, to which they are now also entitled under the 1991 amendments.

The district court referred the plaintiffs' motion for class certification to a magistrate judge, who conducted an evidentiary hearing and subsequently entered a report and recommendation denying class certification. The magistrate judge determined that, although the proposed class met the requirements of Rule 23(a) of

the Federal Rules of Civil Procedure, it could not be certified under any of the alternatives provided in 23(b).  The plaintiffs sought certification primarily under subsection (b)(2), but the magistrate judge found certification under (b)(2) inappropriate because money damages were the "predominant" form of relief sought. Focusing on the individualized nature of the damages claims and the consequent need for significant individualized proof, he reasoned that they were not sufficiently incidental to the injunctive relief to warrant class certification under 23(b)(2).  The magistrate judge also considered class certification under Rule 23(b)(3), but found that the need for individualized damages determinations caused individual issues to predominate over common ones and that a class action would not be a superior method for fair and efficient adjudication of the controversy.

Finally, the magistrate judge contemplated bifurcating the trial into liability and damages stages and certifying a class on only the claims for injunctive relief.  He expressed concern, however, over Seventh Amendment complications arising out of bifurcated proceedings with multiple juries and the difficulty in separating liability and damages issues in discrimination cases. The magistrate judge suggested that the proper use of consolidation under Rule 42 of the Federal Rules of Civil Procedure would permit

the court to avoid the problems presented by a class action in this case while still achieving some degree of efficiency.

The district court adopted the report and recommendation in its entirety and denied class certification. On petition by the plaintiffs, the court certified the question for interlocutory appeal under 28 U.S.C. § 1292(b), which we granted in May 1996. This appeal followed.

## II

We note at the outset that the district court maintains substantial discretion in determining whether to certify a class action, a decision we review only for abuse. See Jenkins v. Raymark Indus., 782 F.2d 468, 471-72 (5th Cir. 1986). Implicit in this deferential standard is a recognition of the essentially factual basis of the certification inquiry and of the district court's inherent power to manage and control pending litigation. See Peques v. Mississippi State Employment Serv., 699 F.2d 760, 763 (5th Cir.), cert. denied, 464 U.S. 991 (1983). Whether the district court applied the correct legal standard in reaching its decision on class certification, however, is a legal question that we review de novo. See Forbush v. J.C. Penney Co., 994 F.2d 1101, 1104 (5th Cir. 1993).

## III

Perhaps it is best at the beginning of this rather extended opinion to say a preliminary word about the task before us. The breadth and complexity of the issues relating to the plaintiffs' broad claims for monetary relief and demand for a jury trial, raised in the context of multiple alternative arguments, make it necessary for us to examine the nature of class actions under Rule 23 and its subparts, as they relate specifically to this case. The plaintiffs urge primarily that the entire case is certifiable as a class action under Rule 23(b)(2). Because they argue that the wide array of monetary remedies they seek does not predominate over requested injunctive or declaratory relief, we must dwell at some length on what "predomination" means for the purposes of Rule 23(b)(2) and how it applies here.

Next, we consider the plaintiffs' argument that, if this case cannot be certified in a (b)(2) class action, it may nevertheless be certified under Rule 23(b)(3). In addressing this argument, we consider whether issues common to the class predominate over issues relating solely to individuals, and whether a (b)(3) class action would be an efficient and manageable means of resolving this case in the light of the plaintiffs' claims for compensatory and punitive damages and their demand for a jury trial.

Finally, given that the plaintiffs ultimately resort to a request for a class action on any available basis (but without

foregoing any of their class claims for monetary relief), we consider whether this case can be severed in such a way as to make class certification appropriate for any of the plaintiffs' claims, while reserving the question whether to certify the remaining claims for subsequent proceedings. Because of the plaintiffs' demand for a jury trial, resolving this issue requires us to consider the Seventh Amendment implications of severing claims that share common factual issues with the remainder of the case.

IV

Class actions brought under Title VII typically proceed under two theories, disparate impact and systemic disparate treatment, both of which are advanced in this case. The disparate impact theory is used to challenge a facially neutral employment policy that falls more harshly on a protected class of employees. Pouncy v. Prudential Ins. Co. of Am., 668 F.2d 795, 799 (5th Cir. 1982). The systemic disparate treatment theory focuses on whether the employer engaged in a "pattern or practice" of intentional discrimination, that is, whether discrimination was the employer's standard operating procedure rather than a sporadic occurrence. See International Bhd. of Teamsters v. United States, 431 U.S. 324, 336 (1977). In years past, we have routinely upheld certification of class actions to resolve Title VII cases involving disparate impact and pattern or practice claims of discrimination. See,

10

e.g., Richardson v. Byrd, 709 F.2d 1016 (5th Cir.), cert. denied, 464 U.S. 1009 (1983); Robinson v. Union Carbide Corp., 538 F.2d 652 (5th Cir. 1976), cert. denied, 434 U.S. 822 (1977); Pettway v. American Cast Iron Pipe Co., 494 F.2d 211 (5th Cir. 1974).

In doing so, we have recognized that the class action device could be implemented effectively to eradicate widespread or institutional-scale discrimination. See Jenkins v. United Gas Corp., 400 F.2d 28, 34 & n.14 (5th Cir. 1968); see also Wright, Miller & Kane, 7A Federal Practice and Procedure § 1776, at 495-96 (2d ed. 1986) (civil rights cases frequently involve group discrimination). Disparate impact cases in particular, which challenge specific, facially-neutral policies with proof of statistical disparities resulting from their uniform application to an employer's workforce, by their very nature implicate class-based claims. We also have molded class actions to accommodate claims that an employer engaged in a pattern or practice of intentional discrimination. Ordinarily, such cases are handled in bifurcated proceedings imposing on the plaintiffs different burdens of proof. See Shipes v. Trinity Indus., 987 F.2d 311, 318 (5th Cir.), cert. denied, 510 U.S. 991 (1993). During the first or "liability" stage, the plaintiffs seek to prove a pattern or practice of invidious class-based discrimination. See id. If successful, individual class members benefit from a presumption of back pay,

11

their entitlement to which is determined at the second or "remedial" stage. To obtain back pay, class members need only prove that they were denied employment opportunities and the extent of their loss, while the burden then shifts to the employer to demonstrate that those class members were denied employment opportunities for legitimate reasons. See Richardson, 709 F.2d at 1021; see also Teamsters, 431 U.S. at 362. Although this final determination typically involves separate hearings for each individual, see Johnson v. Goodyear Tire & Rubber Co., 491 F.2d 1364, 1375 (5th Cir. 1974), courts, without the need to consider the implications of a jury trial, developed techniques such as the use of special masters to streamline the process, see Newberg & Conte, Newberg on Class Actions §§ 24.119-24.121 (3d ed. 1992).

The Civil Rights Act of 1991, however, made fundamental changes in both the procedures and remedies available to Title VII litigants. Among other things, the Act now permits plaintiffs to recover compensatory and punitive damages from an employer who engaged in unlawful intentional discrimination (to include individual disparate treatment and pattern or practice cases). See 42 U.S.C. § 1981a(a)(1). Compensatory damages include relief for "future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses." § 1981a(b)(3). The Act also allows punitive damages if

the employer discriminated "with malice or with reckless indifference to the federally protected rights of an aggrieved individual," § 1981a(b)(1)(2), with the total recovery of compensatory and punitive damages capped at a maximum of $300,000 per plaintiff, see § 1981a(b)(3). Finally, in all cases where the plaintiff seeks compensatory and punitive damages, either party is entitled to demand a trial by jury. See § 1981a(c).

In the class action context, the changes to Title VII are not inconsequential.[1] It is important to remember that the class action device exists primarily, if not solely, to achieve a measure of judicial economy, which benefits the parties as well as the entire judicial system. It preserves the resources of both the courts and the parties by permitting issues affecting all class members to be litigated in an efficient, expedited, and manageable fashion. See Jenkins v. Raymark Indus., 782 F.2d 468, 471 (5th Cir. 1986) (citing General Tel. Co. of the Southwest v. Falcon, 457 U.S. 147, 155 (1982)). Before passage of the Civil Rights Act of

---

[1]To the extent this appeal requires us to examine the effects of the Civil Rights Act of 1991 on class certification in Title VII cases, it is a case of first impression at the appellate level. District courts addressing this and related issues have reached varying conclusions. See, e.g., EEOC v. McDonnell Douglas Corp., 960 F. Supp. 203 (E.D. Mo. 1996); Morgan v. United Parcel Serv. of Am., Inc., 169 F.R.D. 349 (E.D. Mo. 1996); Griffin v. Home Depot, Inc., 168 F.R.D. 187 (E.D. La. 1996); Zapata v. IBP, Inc., 167 F.R.D. 147 (D. Kan. 1996); Bremiller v. Cleveland Psychiatric Inst., 898 F. Supp. 572 (N.D. Ohio 1995); Arnold v. United Artists Theatre Circuit, Inc., 158 F.R.D. 439 (N.D. Cal. 1994).

1991, liability and the appropriate remedies in all Title VII cases were determined in bench trials. Monetary relief was limited to back pay and other equitable remedies. By bringing additional monetary claims within the scope of intentional discrimination cases, the Civil Rights Act of 1991 added to the complexity and diversity of the issues to be tried and decided. By injecting jury trials into the Title VII mix, the 1991 Act introduced, in the context of class actions, potential manageability problems with both practical and legal, indeed constitutional, implications. The broad question we consider here is whether and to what extent these factors affect a class action in this case.

V

The plaintiffs' principal argument is that the district court erred in refusing to certify the entire case as a class action under Rule 23(b)(2). The district court determined that a primary limitation on the (b)(2) class action is the requirement that injunctive or declaratory relief be the predominant relief sought for the class. Provided this requirement were met, claims for related monetary relief could be entertained in the class action. To ascertain the predominant form of relief sought, the district court considered whether: (1) the request for money damages was integral to and flowed directly from the injunctive or declaratory relief; (2) the request for money damages affected the cohesiveness

14

of the class and the homogeneity of interests; (3) issues common to the claims for injunctive or declaratory relief predominated; and (4) the money damages arose out of conduct based on policies generally applicable to all plaintiffs. Applying these factors, the court concluded that the plaintiffs' claims for money damages predominated over their claims for nonmonetary relief, making certification of the class inappropriate under (b)(2).

The plaintiffs argue that the district court committed legal error in this respect. They first contend that Rule 23(b)(2) contains no predomination requirement. Next, assuming that it does, the plaintiffs argue that the district court erred in its formulation of the (b)(2) predomination requirement as well as in its application of that requirement to deny class certification.

A

We consider first whether the district court erred in determining that the primary limitation on a Rule 23(b)(2) class action is the requirement that injunctive or declaratory relief be the predominant relief sought for the class. Naturally, we begin by looking at the plain language of the rule. Rule 23(b)(2)

15

permits cases meeting the requirements of Rule 23(a)[2] to be certified as class actions if:

> the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

The rule is clear that claims seeking injunctive or declaratory relief are appropriate for (b)(2) class certification. Thus, if the plaintiffs sought only injunctive and declaratory relief, this case could readily be certified as a class action under Rule 23(b)(2).

The plaintiffs, however, also seek monetary relief. Rule 23(b)(2) is silent as to whether monetary remedies may be sought in conjunction with injunctive or declaratory relief. The Advisory Committee Notes on Rule 23 state that class certification under (b)(2) "does not extend to cases in which the appropriate final relief relates exclusively or *predominantly* to money damages." Fed. R. Civ. P. 23 (advisory committee notes) (emphasis added). This commentary implies that the drafters of Rule 23 believed that at least some form or amount of monetary relief would be

---

[2]Citgo does not seriously challenge whether the district court was correct in finding that the plaintiff class satisfied the requirements of Rule 23(a), and we assume it does for purposes of this appeal.

16

permissible in a (b)(2) class action.  See Pettway v. American Cast Iron Pipe Co., 494 F.2d 211, 257 (5th Cir. 1974).

In addressing what monetary relief is permissible in a (b)(2) class action, this circuit has chosen an intermediate approach, neither allowing certification without regard to the monetary remedies being sought, nor restricting certification to classes seeking exclusively injunctive or declaratory relief.  See Johnson v. General Motors Corp., 598 F.2d 432, 437 (5th Cir. 1979).  We, like nearly every other circuit, have adopted the position taken by the advisory committee that monetary relief may be obtained in a (b)(2) class action so long as the predominant relief sought is injunctive or declaratory.[3]  See Jenkins, 400 F.2d at 34 n.14; see also, e.g., Eubanks v. Billington, 110 F.3d 87, 92 (D.C. Cir. 1997); Boughton v. Cotter Corp., 65 F.3d 823, 827 (10th Cir. 1995); Zimmerman v. Bell, 800 F.2d 386, 389-90 (4th Cir. 1986); In re School Asbestos Litigation, 789 F.2d 996, 1008 (3d Cir.), cert.

---

[3]We recognize that the Supreme Court's decision in Ticor Title Ins. Co. v. Brown, 114 S.Ct. 1359 (1994), casts doubt on the proposition that class actions seeking money damages can be certified under Rule 23(b)(2).  See id. at 1361 (noting existence of "at least a substantial possibility" that actions seeking money damages are certifiable only under Rule 23(b)(3)).  Were we writing on a clean slate, we might give further consideration to the extent to which monetary relief is available at all in 23(b)(2) class actions.  However, in the absence of a clearer statement by the Supreme Court or en banc reconsideration of the issue, this panel is bound by circuit precedent.  See Texaco v. Louisiana Land & Exploration Co., 995 F.2d 43, 44 (5th Cir. 1993).

denied, 479 U.S. 852 (1986); Holmes v. Continental Can Co., 706 F.2d 1144, 1155 (11th Cir. 1983); Simer v. Rios, 661 F.2d 655, 668 n.24 (7th Cir. 1981), cert. denied, 456 U.S. 917 (1982); Eisen v. Carlisle & Jacquelin, 391 F.2d 555, 564 (2d Cir. 1968). The district court's decision to impose a predomination requirement for (b)(2) class certification is fully consistent with these cases and, therefore, was not error.

B

We consider next the substantially more difficult question whether the district court's formulation of (b)(2)'s predomination requirement was correct. As the district court noted, there is little discussion by appellate courts as to what it means for a particular form of relief to be "predominant." The Advisory Committee Notes make no effort to define or explain the concept. Interpreting the term literally, predominant means "controlling, dominating, [or] prevailing." Webster's Third New International Dictionary 1786 (1993). But how that translates into a workable formula for comparing different types of remedies is not at all clear. Commentators have taken the position that determining whether one form of relief actually predominates in some quantifiable sense is a wasteful and impossible task that should be avoided. See, e.g., Wright, Miller & Kane, supra, at § 1775; Newberg, supra, at § 4.14. Nevertheless, the requirement that

18

injunctive or declaratory relief predominate in a (b)(2) class action is the standard our cases have adopted and which we are bound to apply here. We must determine, therefore, what the concept of predomination means in the context of Rule 23(b)(2).

(1)

In the absence of clear guidance from the Rule or our cases, we turn to the principles and assumptions underlying the (b)(2) class and class actions in general to ascertain whether they add substance to the concept of predomination under Rule 23(b)(2). Cf. United Savings Ass'n v. Timbers of Inwood Forest Assoc., Ltd., 484 U.S. 365, 371 (1988) (Scalia, J.) (explaining that statutory construction is a "holistic endeavor" because provisions that seem ambiguous in isolation are often clarified by the remainder of the statutory scheme).

(a)

Under Rule 23, the different categories of class actions, with their different requirements, represent a balance struck in each case between the need and efficiency of a class action and the interests of class members to pursue their claims separately or not at all. See Amchem Prod., Inc. v. Windsor, 117 S.Ct. 2231, 2246 (1997); United States Parole Comm'n v. Geraghty, 445 U.S. 388, 402-03 (1980); Rutherglen, Title VII Class Actions, 47 U. Chi. L. Rev. 688, 697-98 (1980) (citing Kaplan, Continuing Work of the Civil Committee: 1966 Amendments of the Federal Rules of Civil Procedure, 81 Harv. L. Rev. 356, 387-92 (1967)). The different types of class actions are categorized according to the nature or effect of the relief being sought. The (b)(1) class action

20

encompasses cases in which the defendant is obliged to treat class members alike or where class members are making claims against a fund insufficient to satisfy all of the claims.  See Amchem, 117 S.Ct. at 2245.  The (b)(2) class action, on the other hand, was intended to focus on cases where broad, class-wide injunctive or declaratory relief is necessary.  See Holmes v. Continental Can Co., 706 F.2d 1144, 1155 n.8 (11th Cir. 1983).  Finally, the (b)(3) class action was intended to dispose of all other cases in which a class action would be "convenient and desirable," including those involving large-scale, complex litigation for money damages.  See Amchem, 117 S.Ct. at 2245; see also Penson v. Terminal Transp. Co., 634 F.2d 989, 993 (5th Cir. Unit B Jan. 1981) (citing Fed. R. Civ. P. 23 (advisory committee notes)).  Limiting the different categories of class actions to specific kinds of relief clearly reflects a concern for how the interests of class members will vary, depending upon the nature of the class injury alleged and the nature of the relief sought.

First, different presumptions with respect to the cohesiveness and homogeneity of interests among members of (b)(1), (b)(2), and (b)(3) classes are reflected in the different procedural safeguards provided for each potential class.  See Holmes, 706 F.2d at 1155-56.  For example, the drafters of Rule 23 found it unnecessary to provide (b)(1) and (b)(2) class members with the absolute right

to notice or to opt-out of the class--procedural safeguards made mandatory under (b)(3) for class members who might wish to pursue their claims for money damages in individual lawsuits and to not be bound by membership in a class action. See Fed. R. Civ. P. 23(c)(2).[4]  Providing these rights exclusively to (b)(3) classes demonstrates concern for the effect of monetary claims on class cohesiveness. See Fed. R. Civ. P. 23 (advisory committee notes) ("[i]n the degree there is cohesiveness or unity in the class and the representation is effective, the need for notice to the class will tend toward a minimum"). Monetary remedies are more often related directly to the disparate merits of individual claims. See Holmes, 706 F.2d at 1155-56 (citing Rosen, Title VII Classes and Due Process: To (b)(2) Or Not To (b)(3), 26 Wayne L. Rev. 919, 923 (1980); Note, Antidiscrimination Class Actions Under the Federal Rules of Civil Procedure: the Transformation of Rule 23(b)(2), 88 Yale L.J. 868, 875-76 (1979)).  As a result, a class seeking

---

[4]We have held that the absolute right to notice is a minimum requirement of due process in actions involving claims for monetary relief. See Johnson v. General Motors Corp., 598 F.2d 432, 436-38 (5th Cir. 1979).  In at least some circumstances, due process implicates the right to opt-out as well. See Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 811-12 (1985) (in actions predominantly for money damages and seeking to bind absent plaintiffs in forum with which plaintiffs do not have minimum contacts); Brown v. Ticor Title Ins. Co., 982 F.2d 386, 392 (9th Cir. 1992) (in actions predominantly for money damages regardless of forum), cert. dismissed, 114 S.Ct. 1359 (1994).

substantial monetary remedies will more likely consist of members with divergent interests.

In contrast, because of the group nature of the harm alleged and the broad character of the relief sought, the (b)(2) class is, by its very nature, assumed to be a homogenous and cohesive group with few conflicting interests among its members.[5] See Penson, 634 F.2d at 994; Holmes, 706 F.2d at 1155. The underlying premise of the (b)(2) class--that its members suffer from a common injury properly addressed by class-wide relief--"begins to break down when the class seeks to recover back pay or other forms of monetary relief to be allocated based on individual injuries." Eubanks v. Billington, 110 F.3d 87, 95 (D.C. Cir. 1997). Thus, as claims for individually based money damages begin to predominate, the presumption of cohesiveness decreases while the need for enhanced procedural safeguards to protect the individual rights of class members increases, see id.; Johnson v. General Motors Corp., 598

---

[5]These assumptions have not escaped criticism. See, e.g., Rutherglen, Better Late Than Never: Notice and Opt Out at the Settlement Stage of Class Actions, 71 N.Y.U. L. Rev. 258, 272-76 (1996); Weber, Preclusion and Procedural Due Process in Rule 23(b)(2) Class Actions, 21 U. Mich. J.L. Reform 347 (1988); Grant, Comment, The Right Not To Sue: A First Amendment Rationale for Opting Out of Mandatory Class Actions, 63 U. Chi. L. Rev. 239 (1996).

F.2d 432, 437-38 (5th Cir. 1979), thereby making class certification under (b)(2) less appropriate.[6]

We know, then, that monetary relief "predominates" under Rule 23(b)(2) when its presence in the litigation suggests that the procedural safeguards of notice and opt-out are necessary, that is, when the monetary relief being sought is less of a group remedy and instead depends more on the varying circumstances and merits of each potential class member's case. Cf. Sosna v. Iowa, 419 U.S. 393, 398 n.4 (1975) ("[T]he absence of a claim for monetary relief and the nature of the claim asserted disclose that a Rule 23(b)(2) class action was contemplated. Therefore, the problems [of notice and opt-out] associated with a Rule 23(b)(3) class action . . . are not present in this case."). Because it automatically provides the right of notice and opt-out to individuals who do not want their monetary claims decided in a class action, Rule 23(b)(3) is the appropriate means of class certification when monetary relief is

---

[6]The Advisory Committee Notes do suggest that civil rights cases are examples of the types of cases generally appropriate for (b)(2) certification. As at least one commentator has persuasively demonstrated, however, the Committee's suggestion must not be interpreted as evidencing an intent to give special treatment to civil rights cases. See Rutherglen, supra, 47 U. Chi. L. Rev. at 701-02. To do so would cast doubt on the validity of Rule 23 under the Rules Enabling Act, id., which provides that the Federal Rules of Civil Procedure "shall not abridge, enlarge or modify any substantive right," 28 U.S.C. § 2072(b). See also Amchem, 117 S.Ct. at 2244 ("Rule 23's requirements must be interpreted in keeping with Article III constraints, and with the Rules Enabling Act").

the predominant form of relief sought and the monetary interests of class members require enhanced procedural safeguards.[7]

### (b)

The fact that the predomination requirement serves to protect the rights of class members regarding their monetary interests does not imply, however, that the availability of monetary relief in a (b)(2) class action depends solely or directly on whether class

---

[7]The plaintiffs argue that because our cases have already held that members of a (b)(2) class need no absolute right to opt-out even when monetary relief is sought and made available, see Penson, 634 F.2d at 994; Kincade v. General Tire & Rubber Co., 635 F.2d 501, 507 (5th Cir. Jan. 1981), this class action should be certified under Rule 23(b)(2), notwithstanding any claims for money damages. We cannot agree. When we determined in Penson and Kincade that class members have no absolute right to opt-out of a (b)(2) class, we did not imply that any form of monetary relief could therefore be sought in a (b)(2) class action. The issue in those cases was whether, *given a properly certified (b)(2) class*, claims for monetary relief entitled class members to an absolute right to opt-out, not whether a class seeking monetary relief could be certified under (b)(2) without regard to the monetary relief being sought. See Penson, 634 F.2d at 993; Kincade, 635 F.2d at 506-07. Indeed, we all but expressly rejected the plaintiffs' argument in Nix v. Grand Lodge of the Int'l Ass'n of Machinists & Aerospace Workers, 479 F.2d 382 (5th Cir. 1973), cert. denied, 414 U.S. 1024 (1974). There, a plaintiff class suing under the Labor-Management Reporting and Disclosure Act sought injunctive and declaratory relief as well as compensatory damages. The district court certified the class under Rule 23(b)(2), but only with respect to the nonmonetary claims. On appeal, we concluded that the recovery of class-wide money damages would be highly speculative without proof of individual injury. See id. at 386. Given the differing nature of each plaintiff's claim for money damages and the problems involved with proving separate damages for each class member, we held that "the district court wisely used its discretion to limit the class aspects to the declaratory action." Id.

members are entitled to notice or opt-out rights. Such a narrow focus would ignore the other half of the balance struck by the different categories of Rule 23(b)--the need and efficiency of a class action. As we have earlier observed, the chief purpose behind the class action device is to achieve a significant measure of judicial economy, see Jenkins, 782 F.2d at 471, an interest for which (b)(2)'s predomination requirement must also account. By requiring the predomination of injunctive or declaratory remedies, (b)(2) was intended to serve this purpose by inherently concentrating the litigation on common questions of law and fact. See Holmes, 706 F.2d at 1156; Antidiscrimination Class Actions, supra, at 875-76.

Actions for class-wide injunctive or declaratory relief are intended for (b)(2) certification precisely because they involve uniform group remedies. Such relief may often be awarded without requiring a specific or time-consuming inquiry into the varying circumstances and merits of each class member's individual case. When it does, the relatively complex calculations typically required in class actions for money damages are unnecessary. For these reasons, proposed (b)(2) classes need not withstand a court's independent probe into the superiority of the class action over other available methods of adjudication or the degree to which common issues predominate over those affecting only individual

26

class members, as (b)(3) classes must.  See Amchem, 117 S.Ct. at 2245-46; Forbush v. J.C. Penney Co., 994 F.2d 1101, 1105 (5th Cir. 1993); Johnson v. American Credit Co. of Am., 581 F.2d 526, 531 n.9 (5th Cir. 1978); Manual for Complex Litigation § 33.52, at 348-49 (3d ed. 1995).[8]

(c)

In sum, the predomination requirement of Rule 23(b)(2) serves essentially the same functions as the procedural safeguards and efficiency and manageability standards mandated in (b)(3) class actions.  In balancing the competing interests underlying the class action device, (b)(2)'s predomination requirement serves two basic

---

[8]In Forbush, we held that inquiry into the manageability or superiority of a class action and whether common issues predominate over individual ones has "no place in determining whether a class should be certified under 23(b)(2)."  994 F.2d at 1105; see also Johnson, 581 F.2d at 531 n.9 ("The defendants argue that the class [certified under Rule 23(b)(2)] is unmanageable because it is too large and too diversified.  This argument would be relevant only if Johnson had sought class certification under Rule 23(b)(3)."). Given that judicial economy is a fundamental purpose of a class action, the rule announced in Forbush may seem counterproductive. See Simer v. Rios, 661 F.2d 655, 668 n.24 (7th Cir. 1981), cert. denied, 456 U.S. 917 (1982).  Forbush, however, is entirely consistent with the language and structure of Rule 23.  The rule expressly and specifically directs district courts to consider the predomination of common issues and the manageability of a class action under 23(b)(3).  Rule 23(b)(2) contains no such restriction on class certification.  Thus, Forbush merely applies the time-honored maxim of statutory construction, *expressio unius est exclusio alterius*.  Clearly, the drafters of Rule 23 found it unnecessary to place these restrictions expressly on (b)(1) and (b)(2) class actions because they believed that the nature of the relief permissible in such actions would inherently account for the interests served by the restrictions.

27

purposes: first, it protects the legitimate interests of potential class members who might wish to pursue their monetary claims individually; and, second, it preserves the legal system's interest in judicial economy.

(2)

Consistent with this analysis, we reach the following holding: monetary relief predominates in (b)(2) class actions unless it is incidental to requested injunctive or declaratory relief. Accord Williams v. Owens-Illinois, Inc., 665 F.2d 918, 928-29 (9th Cir.), cert. denied, 459 U.S. 971 (1982). By incidental, we mean damages that flow directly from liability to the class *as a whole* on the claims forming the basis of the injunctive or declaratory relief. See Fed. R. Civ. P. 23(b)(2) (referring only to relief appropriate "with respect to the class as a whole"). Ideally, incidental damages should be only those to which class members automatically would be entitled once liability to the class (or subclass) as a whole is established. See Manual for Complex Litigation, supra, at 348 (citing Simer v. Rios, 661 F.2d 655 (7th Cir. 1981)); see also, e.g., Arnold v. United Artists Theatre Circuit, Inc., 158 F.R.D. 439 (N.D. Cal. 1994) (defendant's liability entitled class to a statutorily mandated damage award). That is, the recovery of incidental damages should typically be concomitant with, not merely consequential to, class-wide injunctive or declaratory relief.

28

Moreover, such damages should at least be capable of computation by means of objective standards and not dependent in any significant way on the intangible, subjective differences of each class member's circumstances. Liability for incidental damages should not require additional hearings to resolve the disparate merits of each individual's case; it should neither introduce new and substantial legal or factual issues, nor entail complex individualized determinations. Thus, incidental damages will, by definition, be more in the nature of a group remedy, consistent with the forms of relief intended for (b)(2) class actions.

Our holding in this respect is not inconsistent with our cases permitting back pay under Title VII in (b)(2) class actions. In Pettway, for example, we noted that Rule 23(b)(2), by its own terms, does not preclude all claims for monetary relief. See 494 F.2d at 257. We construed (b)(2) to permit monetary relief when it was an equitable remedy, and the defendant's conduct made equitable remedies appropriate. See id. Back pay, of course, had long been recognized as an equitable remedy under Title VII. See Johnson v. Georgia Highway Express, Inc., 417 F.2d 1122, 1125 (5th Cir. 1969) ("[a] demand for back pay is not in the nature of damages, but rather is an integral part of the statutory equitable remedy"). Thus, the Pettway court reasoned:

> This is a case in which final injunctive relief is appropriate and the defendant's liability for back pay is

29

> rooted in grounds applicable to all members of the defined class. Under these circumstances the award of back pay, *as one element of the equitable remedy*, conflicts in no way with the limitations of Rule 23(b)(2).

494 F.2d at 257 (emphasis added). In short, Pettway held that back pay could be sought in a (b)(2) class action because, as an equitable remedy similar to other forms of affirmative injunctive relief permitted in (b)(2) class actions, it was an integral component of Title VII's "make whole" remedial scheme. See id. at 252, 257.[9] If the instant case involved only claims for equitable monetary relief, Pettway would control. Pettway, however, did not address the availability in (b)(2) class actions of other forms of monetary relief, such as compensatory and punitive damages, nor did it have any occasion to do so.

As the plaintiffs correctly point out, Pettway stated that the (b)(2) inquiry into whether one form of relief predominates over

_____

[9]Although, as the dissent notes, the Pettway opinion included some broad language regarding the potential availability of monetary relief in (b)(2) class actions, our subsequent cases have not construed Pettway so broadly. As discussed previously, our cases have adopted the position taken by the Rule 23 advisory committee that monetary relief may not be sought in a (b)(2) class action if it predominates over the requested injunctive or declaratory relief. We do not attempt to say how Pettway is to be interpreted in the light of these subsequent opinions. Cf., e.g., Rutherglen, Notice, Scope, and Preclusion in Title VII Class Actions, 69 Va. L. Rev. 11, 24-26 (1983) (suggesting that classification of monetary remedies as legal or equitable may be unhelpful in understanding what types of monetary relief should be permitted in a (b)(2) class action).

another involves consideration of the "pragmatic ramifications of adjudication" and the effect of the relief sought, rather than any special attributes of the class involved. See id. at 256 (citing 3B Moore's Federal Practice § 23.45[1] at 703 (2d ed. 1969)). The incidental damages standard actually takes these considerations into account. We recognize that, as a matter of degree, whether a given monetary remedy qualifies as incidental damages will not always be a precise determination. Nor is it intended to be. "[C]omplex cases cannot be run from the tower of the appellate court given its distinct institutional role and that it has before it printed words rather than people." Richardson v. Byrd, 709 F.2d 1016, 1019 (5th Cir.), cert. denied, 464 U.S. 1009 (1983). The district courts, in the exercise of their discretion, are in the best position to assess whether a monetary remedy is sufficiently incidental to a claim for injunctive or declaratory relief to be appropriate in a (b)(2) class action.

(3)

Returning to the district court's decision in the instant case, we conclude that it applied the correct legal standard in determining whether to certify a class under Rule 23(b)(2). Although it was inappropriate for (b)(2) certification to consider whether issues common to the class predominated over other issues, see Forbush, 994 F.2d at 1105, the district court's analysis in

31

this respect was separate from and in addition to its application of the proper predomination inquiry. It is clear that the district court concentrated its analysis on the extent to which the various forms of requested monetary relief would flow directly from a finding of liability on the plaintiffs' claims for class-wide injunctive and declaratory relief. With respect to applying the correct legal standard for predomination under Rule 23(b)(2), therefore, we cannot say that the district court erred in any way requiring reversal.

C

Having determined that the district court adopted the correct legal standard in assessing the plaintiffs' monetary claims, we must now resolve whether it abused its discretion in applying that standard to deny certification of a class action under Rule 23(b)(2). The plaintiffs' claims for monetary relief include back pay, front pay, compensatory damages, punitive damages, prejudgment interest, attorneys' fees, and retroactive benefits. Examining the different forms of monetary relief, the district court concluded that they did not flow directly from proof of liability on the aspects of the plaintiffs' disparate impact or pattern or practice claims that entitled them to injunctive or declaratory relief. Entitlement to back pay and other equitable monetary remedies, it explained, still required separate hearings in which each class

member would have to show that the discrimination caused a loss. Similarly, recovery of compensatory and punitive damages required particularly individualized proof of injury, including how each class member was personally affected by the discriminatory conduct. Thus, the district court held that the claims for money damages were not sufficiently incidental to the injunctive and declaratory relief being sought to permit certification under (b)(2).[10]

We have little trouble affirming the district court's finding that the plaintiffs' claims for compensatory and punitive damages are not sufficiently incidental to the injunctive and declaratory relief being sought to permit them in a (b)(2) class action. We start with the premise that, in this circuit, compensatory damages for emotional distress and other forms of intangible injury will not be presumed from mere violation of constitutional or statutory rights. See Patterson v. P.H.P Healthcare Corp., 90 F.3d 927, 938-40 (5th Cir. 1996), cert. denied, 117 S.Ct. 767 (1997). Specific individualized proof is necessary, and testimony from the plaintiff alone is not ordinarily sufficient. See id. at 940; Price v. City of Charlotte, N.C., 93 F.3d 1241, 1250-54 (4th Cir. 1996). Compensatory damages may be awarded only if the plaintiff

_____

[10]Of course, to the extent the district court applied an incidental damages standard to the plaintiffs' claims for back pay, its analysis was flawed. See Pettway, 494 F.2d at 256-57. As we shall explain, however, see infra Part VII, the district court's error in this respect has no effect on the outcome of this appeal.

33

submits proof of actual injury, often in the form of psychological or medical evidence, or other corroborating testimony from a third party.  See Patterson, 90 F.3d at 940 (citing Carey v. Piphus, 435 U.S. 247, 264 (1978)); Brady v. Fort Bend County, No. 96-20886, 1998 WL 353861, *25-28 (5th Cir. July 2, 1998).  The very nature of these damages, compensating plaintiffs for emotional and other intangible injuries, necessarily implicates the subjective differences of each plaintiff's circumstances; they are an individual, not class-wide, remedy.[11]  The amount of compensatory damages to which any individual class member might be entitled cannot be calculated by objective standards.  Furthermore, by requiring individualized proof of discrimination and actual injury to each class member, compensatory damages introduce new and substantial legal and factual issues.  Clearly, after Patterson, compensatory damages under Title VII and 42 U.S.C. § 1981 are not incidental to class-wide injunctive or declaratory relief for discrimination.

---

[11]For example, in Bogard v. Cook, 586 F.2d 399 (5th Cir. 1978), a civil rights case under section 1983, we pointed out that "[c]laims for individual damage relief . . . would have required separate mini-trials for each prisoner," and for that reason, a (b)(3) class action, and not a (b)(1) or (b)(2) class action, "would have been the proper classification" for such a case.  Id. at 409.  Even so, we opined, "[g]iven the lack of common questions of fact as to many of those claims, and the unmanageability of the suit had they been included, we cannot believe that the district court would have allowed the claims as part of that action if they had been recognized as potentially possible."  Id.

34

The plaintiffs' claims for punitive damages are similarly non-incidental.  Although the plain language of the Civil Rights Act of 1991 could be interpreted to preclude class-wide punitive damages awards in any case without individualized proof of injury, see 42 U.S.C. § 1981a(b)(1) (punitive damages available if employer acted with malice or reckless indifference to rights of "aggrieved individual"), we need not determine today whether it is so limiting.  Assuming punitive damages may be awarded on a class-wide basis, without individualized proof of injury, where the entire class or subclass is subjected to the same discriminatory act or series of acts, no such discrimination is alleged in this case.  The plaintiffs challenge broad policies and practices, but they do not contend that each plaintiff was affected by these policies and practices in the same way.  Indeed, the plaintiffs seek to certify a class of a thousand potential plaintiffs spread across two separate facilities, represented by six different unions, working in seven different departments, challenging various policies and practices over a period of nearly twenty years.  Some plaintiffs may have been subjected to more virile discrimination than others: with greater public humiliation, for longer periods of time, or based on more unjustifiable practices, for example.  Particular discriminatory practices may have been gradually ameliorated year by year over the twenty-year period.  Some discriminatory policies

may have been implemented more--or less--harshly depending on the department or facility involved.

Punitive damages cannot be assessed merely upon a finding that the defendant engaged in a pattern or practice of discrimination. Such a finding establishes only that there has been general harm to the group and that injunctive relief is appropriate. See Price Waterhouse v. Hopkins, 490 U.S. 228, 266 (1989) (O'Connor, J., concurring in the judgment). Actual liability to individual class members, and their entitlement to monetary relief, are not determined until the second stage of the trial. See id.; Dillon v. Coles, 746 F.2d 998, 1004 (3d Cir. 1984). And because punitive damages must be reasonably related to the reprehensibility of the defendant's conduct and to the compensatory damages awarded to the plaintiffs, see Patterson, 90 F.3d at 943-44 (citing BMW v. Gore, 116 S.Ct. 1589, 1598-99 (1996)), recovery of punitive damages must necessarily turn on the recovery of compensatory damages. Thus, punitive damages must be determined after proof of liability to individual plaintiffs at the second stage of a pattern or practice case, not upon the mere finding of general liability to the class at the first stage. Moreover, being dependent on non-incidental compensatory damages, punitive damages are also non-incidental-- requiring proof of how discrimination was inflicted on each plaintiff, introducing new and substantial legal and factual

36

issues, and not being capable of computation by reference to objective standards.

Given the degree to which recovery of compensatory and punitive damages requires individualized proof and determinations, they clearly do not qualify as incidental damages in this case.[12] Such damages, awarded on the basis of intangible injuries and interests, are uniquely dependent on the subjective and intangible differences of each class member's individual circumstances. We

_____

[12]The plaintiffs' reliance on Parker v. Local Union No. 1466, United Steelworkers of Am., AFL-CIO, 642 F.2d 104 (5th Cir. Unit B April 1981) (per curiam), for the proposition that claims for compensatory and punitive damages are properly certified under Rule 23(b)(2) is misplaced. First and foremost, the Parker court was operating under the assumption that compensatory and punitive damages could be presumed from violation of the plaintiffs' rights, see Gore v. Turner, 563 F.2d 159, 164 (5th Cir. 1977), a rule adopted before Carey and Patterson. Second, under the abuse of discretion standard, we are required to defer to the judgments of the district courts as to whether certain monetary relief predominates over injunctive or declaratory relief in any given case. See Nix v. Grand Lodge of the Int'l Ass'n of Machinists & Aerospace Workers, 479 F.2d 382, 386 (5th Cir. 1973) (refusal to certify class action under Rule 23(b)(2) on claims for compensatory damages was not an abuse of discretion), cert. denied, 414 U.S. 1024 (1974). Reasonable differences in judgment are part and parcel of the substantial discretion district courts maintain over certification of class actions. See, e.g., Boughton v. Cotter Corp., 65 F.3d 823, 827 (10th Cir. 1995) (no abuse of discretion in refusing to certify class seeking predominantly money damages). Finally, to the extent Parker is inconsistent with Nix, a case also decided under the Labor Management Reporting and Disclosure Act, we are bound to follow Nix, the earlier of the two decisions. See Texaco v. Louisiana Land & Exploration Co., 995 F.2d 43, 44 (5th Cir. 1993) ("[i]n the event of conflicting panel opinions, the earlier one controls"). We do so by affirming the district court's decision that claims for compensatory and punitive damages were not properly certifiable in a (b)(2) class action.

cannot, therefore, detect an abuse of discretion in the district court's finding that the plaintiffs' claims for compensatory and punitive damages were inappropriate for (b)(2) certification.[13]

## VI

### A

Given that the district court acted within its discretion in denying class certification of the entire action under Rule 23(b)(2) because of the predomination of money damages in this case, we next consider the plaintiffs' argument that the district court erred in refusing to certify a "hybrid" class action, whereby the plaintiffs' claims for compensatory and punitive damages would

---

[13]The plaintiffs are apprehensive that such a holding will preclude (b)(2) class actions in civil rights cases. They suggest that class representatives may no longer be adequate under Rule 23(a)(4) because they would not be able to seek for the class the full (monetary) recovery otherwise available to its members on an individual basis. In the first place, we are not certain that an adequacy of representation problem would exist under these circumstances. But even if it would, *this concern* might well be addressed, it seems to us, through the use of the notice and opt-out mechanisms under Rule 23(d), see, e.g., Penson, 634 F.2d at 994; Eubanks, 110 F.3d at 93, 96, provided the other criteria for class certification have been met. Those members of the putative class who ultimately did not wish to participate in the class action could simply opt out. Indeed, we have long-required notice in (b)(2) class actions in which equitable monetary claims are at stake. See Johnson, 598 F.2d at 438. By providing (b)(2) class members with the procedural safeguards of notice and opt-out, the district court can permit civil rights class actions to proceed under 23(b)(2) without requiring that such actions meet the stiffer substantive requirements of 23(b)(3), yet still ensure that the class representatives adequately represent the interests of unnamed class members.

be certified under Rule 23(b)(3), and the rest of the class action certified under Rule 23(b)(2). Rule 23(b)(3) permits certification of a class action otherwise meeting the requirements of Rule 23(a) when:

> the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that the class action is superior to other methods for a fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interests of the members of the class in individually controlling prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) concentrating the litigation of the claims in a particular forum; (D) the difficulties likely to be encountered in management of a class action.

The plaintiffs argue that these requirements are clearly satisfied in this case. They contend that the (b)(3) predominance standard focuses on the issue of liability, and if the liability issues are common to the class, common questions predominate over individual ones, citing <u>In re Kirschner Med. Corp. Sec. Litig.</u>, 139 F.R.D. 74 (D. Md. 1991). The plaintiffs insist further that, here, a class action is plainly superior to hundreds of individual lawsuits.

The district court disagreed. It concluded that, class action or not, Citgo's liability for compensatory and punitive damages could be established only through examination of each plaintiff's individual circumstances. Individual issues therefore predominated the litigation. Furthermore, the district court expressed concern

39

that individualized monetary damages determinations for more than a thousand potential plaintiffs would require multiple juries. This concern, as well as the potential overlap of issues that would be decided in bifurcated proceedings, implicated significant Seventh Amendment, efficiency, and manageability problems.

B

In assessing whether the district court abused its discretion in refusing to certify a (b)(3) class action, we begin with this circuit's most recent case on Rule 23(b)(3) analysis, Castano v. American Tobacco Co., 84 F.3d 734 (5th Cir. 1996). Castano makes clear that deciding whether common issues predominate and whether the class action is a superior method to resolve the controversy requires an understanding of the relevant claims, defenses, facts, and substantive law presented in the case. Id. at 744. As we have discussed previously, Patterson holds that the recovery of compensatory and punitive damages in Title VII cases requires individualized and independent proof of injury to, and the means by which discrimination was inflicted upon, each class member. See 90 F.3d at 938-44. The plaintiffs' claims for compensatory and punitive damages must therefore focus almost entirely on facts and issues specific to individuals rather than the class as a whole: what kind of discrimination was each plaintiff subjected to; how did it affect each plaintiff emotionally and physically, at work

40

and at home; what medical treatment did each plaintiff receive and at what expense; and so on and so on. Under such circumstances, an action conducted nominally as a class action would "degenerate in practice into multiple lawsuits separately tried." Castano, 84 F.3d at 745 n.19 (citing Fed. R. Civ. P. 23 (advisory committee notes)).

The predominance of individual-specific issues relating to the plaintiffs' claims for compensatory and punitive damages in turn detracts from the superiority of the class action device in resolving these claims. See id. (explaining that the greater the number of individual issues, the less likely superiority can be established); see also Andrews v. AT&T, 95 F.3d 1014, 1023 (11th Cir. 1996). These manageability problems are exacerbated by the fact that this action must be tried to a jury and involves more than a thousand potential plaintiffs spread across two separate facilities, represented by six different unions, working in seven different departments, and alleging discrimination over a period of nearly twenty years. See, e.g., In re Chevron U.S.A., Inc., 109 F.3d 1016, 1018 (5th Cir. 1997) (considering the use of bellwether trials to resolve mass torts with widely diverse issues). In order to manage the case, the district court faced the likelihood of bifurcated proceedings before multiple juries. This result in turn increased the probability that successive juries would pass on

issues decided by prior ones, introducing potential Seventh Amendment problems and further decreasing the superiority of the class action device. See Castano, 84 F.3d at 750-51; In re Rhone-Poulenc Rorer, Inc., 51 F.3d 1293, 1302-03 (7th Cir. 1995). Finally, the "most compelling rationale for finding superiority in a class action--the existence of a negative value suit," is missing in this case. Castano, 84 F.3d at 748; see also Amchem, 117 S.Ct. at 2246. The relatively substantial value of these claims (for the statutory maximum of $300,000 per plaintiff) and the availability of attorneys' fees eliminate financial barriers that might make individual lawsuits unlikely or infeasible. See Castano, 84 F.3d at 748. Thus, the principles underlying the (b)(3) class action counsel against (b)(3) certification in this case.

The plaintiffs attempt to avoid this result by arguing that the common, overarching issue regarding the existence of plant-wide racially discriminatory practices or policies at the Citgo manufacturing complex justifies (b)(3) class certification. This argument, however, fails to appreciate the overwhelming number of individual-specific issues in this case. The Eleventh Circuit recently encountered this situation in rejecting (b)(3) class certification in a race discrimination suit similar to this one. In Jackson v. Motel 6 Multipurpose, Inc., 130 F.3d 999 (11th Cir. 1997), plaintiffs alleged that Motel 6 engaged in a nationwide

42

practice of racial discrimination in renting vacant rooms and providing housekeeping services. The district court certified a class action under Rule 23(b)(3). The Eleventh Circuit reversed, holding that class certification was an abuse of discretion.[14] The court reasoned that the plaintiffs' claims would require "distinctly case-specific inquiries into the facts surrounding each alleged incident of discrimination." Id. at 1006. It found dispositive the fact that "most, if not all, of the plaintiffs' claims [would] stand or fall, not on the answer to the question whether Motel 6 has a practice or policy of discrimination, but on the resolution of these highly case-specific issues." Id. We find the same logic applicable to the plaintiffs' claims for compensatory and punitive damages in the instant case. The success of these claims will turn ultimately on the special circumstances of each individual's case. Accordingly, we hold that the district court did not abuse its discretion in refusing to certify these claims in a class action under Rule 23(b)(3). See, e.g., Howard v. City of Greenwood, 783 F.2d 1311, 1313 n.2 (5th Cir. 1986) (rejecting certification of a (b)(3) class action because the

---

[14]The court dismissed, without analysis, the possibility that the case could be certified as a (b)(2) class action. See id. at 1005 ("[t]he only one of Rule 23's alternatives that is arguably fulfilled by the Jackson plaintiffs' claims is that found in Rule 23(b)(3)").

plaintiffs' claims of systemic police brutality involved a predomination of individualized issues).[15]

## VII

Finally, the plaintiffs argue that, in the event their claims for compensatory and punitive damages cannot be certified in a class action at this *initial* stage of the litigation, they are entitled to have some part of this case certified now and tried as a class action to whatever extent permissible under Rule 23. More specifically, as we understand the plaintiffs' argument, they suggest that the court should certify a class action on the disparate impact claim and the first stage of the pattern or practice claim--under Rule 23(b)(2) or 23(b)(3)--and reserve judgment on whether to certify under 23(b)(3) the other claims-- including the claims for compensatory and punitive damages--until these initial issues have been resolved. The record is not

---

[15]The plaintiffs argue that we could break the class into subclasses to avoid manageability problems, yet they have never offered us or the district court any workable plan for doing so. As the district court expressly observed: "[T]he plaintiffs have failed to present the court with a practical plan for handling this action as a class action despite the request from the court to do so. Other than a generalized claim that bifurcating the trial into liability and damages stages would be helpful, the plaintiffs have offered no specific methods for handling the various issues and theories alleged in this action." Celestine v. Citgo Petroleum Corp., 165 F.R.D. 463, 471 (W.D. La. 1995). Without any help from the plaintiffs, the district court certainly did not abuse its discretion in not attempting to devise a workable subclassing plan of its own.

entirely clear as to whether the plaintiffs advanced this same position below. Nevertheless, they did consistently maintain that, if the district court certified a class action, it could always modify or limit certification under Rule 23(c)(1), depending on the facts and issues developed in discovery. In response, the district court expressly considered severing particular claims for class action treatment--for example, certifying a class action on only the claims for injunctive relief. It declined to do so, however, based on concerns for the Seventh Amendment as well as the efficiency and manageability implications of the plaintiffs' jury demand. We will therefore consider the possibility of severing the first stage of the pattern or practice claim for certification under (b)(2) or (b)(3), and allowing the district court to try it and the disparate impact claim together to a jury--the court reserving its equitable determinations until after the jury submits its findings.[16]

---

[16]The plaintiffs briefly raise the possibility that this case could be certified as a class action under Rule 23(b)(1) because the prosecution of separate actions would create the risk of inconsistent adjudications with respect to individual class members and incompatible standards of conduct for Citgo. See Fed. R. Civ. P. 23(b)(1)(A). Given the individual-specific nature of the plaintiffs' claims for compensatory and punitive damages, we perceive no risk of inconsistent adjudications or incompatible standards of conduct in having *those claims* adjudicated separately. Separate adjudication of the plaintiffs' claims for injunctive or equitable relief, however, may present such a risk. But we have already noted that these claims meet the requirements of Rule 23(b)(2), and because the Seventh Amendment ultimately precludes a

45

A

(1)

We should make clear from the outset that in asserting this partial certification argument, the plaintiffs have not agreed to drop their claims for compensatory and punitive damages *as a class action issue*. In making their argument for a tentative, "partial certification," the plaintiffs are relying presumably on the possibility that class-wide discovery and the resolution of the disparate impact claim and first stage of the pattern or practice claim may narrow the issues in the case, which in turn may make later certification of the remaining claims in a (b)(3) class action appropriate. Cf., e.g., Butler v. Home Depot, 70 Fair Empl. Prac. Cas. (BNA) 51 (N.D. Cal. 1996) (certifying class action on the first stage of a pattern or practice case and reserving judgment on certification of the second stage). The plaintiffs' choice to preserve the claims for compensatory and punitive damages as a class action issue, however, has significant implications for certification of the remaining issues.

First, we fail to see how certifying the first stage of the pattern or practice claim significantly increases the likelihood

_____

class action in this case regardless of the Rule 23(b) provision under which the action could be certified, we need not consider whether the plaintiffs' equitable claims could also be certified under Rule 23(b)(1).

46

that later certification of the second stage of the pattern or practice claim, including the claims for compensatory and punitive damages, would be possible. The second stage of a pattern or practice claim is essentially a series of individual lawsuits, except that there is a shift of the burden of proof in the plaintiff's favor. As the Supreme Court has made clear, there are no common issues between the first stage of a pattern or practice claim and an individual discrimination lawsuit. See Cooper v. Federal Reserve Bank, 467 U.S. 867, 877-80 (1984). As a result, we see no legal basis for the district court to certify a class action on the first stage of the plaintiffs' pattern or practice claim when there is no foreseeable likelihood that the claims for compensatory and punitive damages could be certified in the class action sought by the plaintiffs. Thus, we cannot say that the district court's refusal to grant a partial certification of the first stage of the plaintiffs' pattern or practice claim was an abuse of discretion.

Second, certifying the first stage of the pattern or practice claim under (b)(3) is foreclosed by Castano. We have already held that, when considered as a whole, the plaintiffs' pattern or practice claim in this case implicates predominantly individual-specific issues. We based this holding on the wide array of individual issues attendant to the compensatory and punitive

47

damages claims. Thus, under the plaintiffs' theory, certification of the first stage of the pattern or practice claim would be appropriate presumably because individual-specific issues would be "severed"--but only temporarily--under Rule 23(c)(4), making issues common to the class predominant (at least theoretically) for the purposes of meeting the (b)(3) requirements. But such an attempt to "manufacture predominance through the nimble use of subdivision (c)(4)" is precisely what Castano forbade. See 84 F.3d at 745 n.21. As the court explained, "[r]eading rule 23(c)(4) as allowing a court to sever issues until the remaining common issue predominates over the remaining individual issues would eviscerate the predominance requirement of rule 23(b)(3); the result would be automatic certification in every case where there is a common issue, a result that could not have been intended." Id.[17]

(2)

---

[17]We further note that the plaintiffs' attempts at piecemeal certification of a class action, which they refuse to limit voluntarily, distorts the certification process and ultimately results in unfairness to all because of the increased uncertainties in what is at stake in the litigation and in whether the litigation will ever resolve any significant part of the dispute. The plaintiffs have emphasized that class certification will "facilitate" settlement. We are not sure of such a result. In any event, we should not condone a certification-at-all-costs approach to this case for the simple purpose of forcing a settlement. Settlements should reflect the relative merits of the parties' claims, not a surrender to the vageries of an utterly unpredictable and burdensome litigation procedure.

48

Consequently, the plaintiffs are left with the possibility of certifying a class action only on the disparate impact claim--again, holding in abeyance the decision whether to certify the pattern or practice claim at a later time. As noted previously, injunctive, declaratory, and other forms of equitable relief such as back pay are available to a disparate impact claimant and in class actions certified under Rule 23(b)(2). Indeed, our cases have held that failure to certify a class action on such claims may amount to an abuse of discretion. See, e.g., Johnson, 491 F.2d at 1375. Furthermore, resolution of the entire disparate impact claim could conceivably narrow the issues to be tried in the pattern or practice claim. It is arguable that the court would have a better understanding of Citgo's employment policies--*e.g.*, which plaintiffs were subjected to which policies in which department or facility, when and for how long. And it may be likely that class members without colorable claims could be identified, which would decrease the size of the class and the number of individual-specific issues. This, in turn, could make the case more manageable as a jury trial and make the class action device a superior method for adjudicating the controversy. Thus, in the context of the plaintiffs' partial certification argument, we will consider the possibility of certifying a class action on the disparate impact claim, with the district court reserving judgment

on whether to certify the pattern or practice claim under Rule 23(b)(3) until the disparate impact claim has been resolved.[18]

The standards of Rule 23, however, are not the only limitations on the availability of a class action in this case. As the district court recognized, the right to a jury trial provided by the Civil Rights Act of 1991, and demanded by the plaintiffs, implicates the Seventh Amendment. We therefore consider whether Seventh Amendment concerns preclude a class action on the plaintiffs' disparate impact claim, severed from their pattern or practice claim.

B

The Seventh Amendment preserves the right to a jury trial "in Suits at common law." U.S. Const. amend. VII. This right encompasses all actions in which legal rights are to be determined, as opposed to those in which only equitable rights and remedies are involved. Cox v. C.H. Masland & Sons, Inc., 607 F.2d 138, 142 (5th Cir. 1979) (citing Ross v. Bernhard, 396 U.S. 531 (1970)). Of course, application of the Seventh Amendment is not limited to actions at common law. Legal rights, to which the right to a jury trial attaches, may be statutorily created as well. Curtis v. Loether, 415 U.S. 189, 194 (1974). Section 1981a of the Civil

---

[18]Of course, in speaking of a disparate impact claim, we are referring to the entire claim, for all forms of available relief-- including individual monetary relief such as back pay.

Rights Act of 1991 is such a statute. It grants both parties the right to demand a jury trial when compensatory and punitive damages are sought in intentional discrimination claims under Title VII. See 42 U.S.C. § 1981a(c).

Because the statute expressly provides that compensatory and punitive damages are not available in disparate impact claims, see § 1981a(a)(1), the right to a jury trial under Title VII extends only to the plaintiffs' pattern or practice claim, see § 1981a(c).[19] Once the right to a jury trial attaches to a claim, however, it extends to all factual issues necessary to resolving that claim. See Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 510-11 (1959). Thus, under section 1981a, the right to a jury trial extends to all factual issues necessary to determine liability on the plaintiffs' pattern or practice claim and the recovery of compensatory and punitive damages.

_____

[19]Of course, even in pattern or practice cases involving requests for compensatory and punitive damages, the right to a jury trial provided by section 1981a(c) does not include the power to determine the availability of back pay or front pay. See § 1981a(b)(2) ("Compensatory damages awarded under this section shall not include backpay, interest on backpay, or any other type of relief authorized under [42 U.S.C. § 2000e-5(g)]."). These are equitable remedies to which no right to jury trial attaches. See Wilson v. Belmont Homes, Inc., 970 F.2d 53, 55-56 (5th Cir. 1992) (no right to have a jury determine back pay because it is an equitable remedy under Title VII); Johnson v. Chapel Hill Indep. Sch. Dist., 853 F.2d 375, 383 (5th Cir. 1986) (front pay is equitable remedy like back pay under Title VII). Nevertheless, a district court may empanel an advisory jury on such issues in accordance with Rule 39(c) of the Federal Rules of Civil Procedure.

The Federal Rules of Civil Procedure also act to protect the parties' right to a jury trial, once one is demanded, on the claims for compensatory and punitive damages.  Rule 38(d) provides that once a party has demanded a jury trial, the demand cannot be withdrawn without the consent of both parties.[20]  Moreover, a general demand will be deemed to extend to all issues in the case triable to a jury.  Fed. R. Civ. P. 38(c).  Thus, the jury demand in this case extends to all issues that materially relate to liability on the pattern or practice claims and the recovery of compensatory or punitive damages; on the other hand, the jury demand itself does not reach the disparate impact claim or any equitable relief.

Resolution of the disparate impact claim and of equitable remedies must nevertheless take into account the Seventh Amendment. When claims involving both legal and equitable rights are properly joined in a single case, the Seventh Amendment requires that all factual issues common to these claims be submitted to a jury for decision on the legal claims before final court determination of the equitable claims.  Roscello v. Southwest Airlines Co., 726 F.2d 217, 221 (5th Cir. 1984) (citing Dairy Queen, Inc. v. Wood, 369 U.S. 469, 479 (1962)); see also Ross, 396 U.S. at 537-38.  In this

---

[20]Neither party has consented to withdrawing the demand in this case.

52

case, both parties have a Seventh Amendment right to have a jury determine all factual issues necessary to establish the plaintiffs' pattern or practice claim, a claim for legal damages that they have properly joined in the same action with a disparate impact claim for equitable relief. As a result, each factual issue common to these claims,[21] if any, must be decided by the jury before the district court considers the merits of the disparate impact claim and whether the plaintiffs are entitled to any equitable relief. See Ward v. Texas Employment Comm'n, 823 F.2d 907, 908-09 (5th Cir. 1987).

C

In deciding whether the district court should have temporarily severed the disparate impact claim for class treatment, we must ascertain whether this claim shares any factual issues with the pattern or practice claim, which both parties are entitled to have decided first by a jury.

---

[21]The existence of common factual *issues* is to be distinguished from the existence of overlapping *evidence*. For purposes of the Seventh Amendment, the question is whether factual issues overlap, thus requiring one trier-of-fact to decide a disputed issue that must be decided by a subsequent jury, not whether the two fact-finders will merely have to consider similar evidence in deciding distinct issues. See Alabama v. Blue Bird Body Co., 573 F.2d 309, 318-19 (5th Cir. 1978).

Because the same employment policies and practices are challenged under both claims,[22] it is clear that there are over-lapping issues. First and foremost, an essential factual element of both claims is a finding that the challenged employment practice caused each individual class member to suffer an adverse employment action (*e.g.*, whether each individual class member failed a challenged employment test and was not hired because of that failure). Indeed, in resolving either claim, the trier of fact must determine whether each class member was even in a position to be affected by the challenged employment practice (*e.g.*, whether each class member applied for an open job). Furthermore, as Judge Skelly Wright explained in Segar v. Smith, significant overlap of factual issues is almost inevitable whenever disparate impact and pattern or practice claims are joined in the same action:

> [T]he employer's effort to rebut the pattern or practice claim by articulating a legitimate nondiscriminatory explanation may have the effect of putting before the court all of the elements of a traditional disparate impact case. By its explanation of an observed disparity the employer will typically pinpoint an employment practice (or practices) having a disparate impact on a

---

[22]Recall that the plaintiffs identified the following employment practices as resulting in unlawful race discrimination: (1) failure to post or announce job vacancies; (2) use of an informal word-of-mouth announcement process for filling job vacancies; (3) use of racially biased tests to evaluate candidates for hire or promotion; and (4) use of a subjective decision-making process by a predominantly white supervisory staff in reviewing applicants for hire and employees for promotion.

> protected class. And to rebut plaintiffs' case the employer will typically be required to introduce evidence showing that the employment practice in fact caused the observed disparity. In this situation, between the plaintiffs' prima facie showing of disparity and the defendant's rebuttal explanation of the disparity, the essential elements of a disparate impact case will have been placed before the trier of fact.

738 F.2d 1249, 1268-70 (D.C. Cir. 1984), cert. denied, 471 U.S. 1115 (1985); see also Fentonmiller, Damages, Jury Trials and the Class Action under the Civil Rights Act of 1991, 12 Lab. Law. 421, 438-46 (1997).

Similarly, the business necessity defense to disparate impact claims and the legitimate nondiscriminatory reason defense to disparate treatment claims are not "so distinct and separable" from one another that they may be considered separately by multiple factfinders without violating the Seventh Amendment. See Gasoline Prod. Co. v. Champlin Refining Co., 283 U.S. 494, 500 (1931). To rebut the plaintiffs' claim that any one of Citgo's challenged employment practices resulted in a disparate impact, Citgo would have to establish that the "challenged practice is job-related for the position in question and consistent with business necessity." 42 U.S.C. § 2000e-2(k)(1)(A)(I). It is the rare case indeed in which a challenged practice is job-related and a business necessity, yet not a legitimate nondiscriminatory reason for an adverse employment action taken pursuant to that practice. Thus, a finding that a challenged practice is job related and a business

necessity in response to a disparate impact claim strongly, if not wholly, implicates a finding that the same practice is a legitimate nondiscriminatory reason for the employer's actions in a pattern or practice claim.  These issues are questions of fact, see, e.g., St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 524 (1993); Wards Cove Packing Co. v. Atonio, 490 U.S. 642, 660 (1989), common to the plaintiffs' disparate impact and pattern or practice claims.[23]

---

[23]The plaintiffs have argued that Cooper v. Federal Reserve Bank, 467 U.S. 867 (1984), stands for the proposition that there is no overlap of factual issues among their claims.  We disagree.  In Cooper, the Supreme Court held that an adverse judgment at the liability stage of a pattern or practice class action does not automatically preclude--by virtue of res judicata or collateral estoppel--individual discrimination lawsuits by class members.  See id. at 880.  The Court reasoned that "the existence of a valid individual claim does not necessarily warrant the conclusion that the individual plaintiff may successfully maintain a class action [while] [i]t is equally clear that a class plaintiff's attempt to prove the existence of a companywide policy . . . may fail even though discrimination against one or two individuals has been proved."  Id. at 877-78.  At the first or liability stage of a pattern or practice case, the plaintiffs seek to prove that discrimination was the defendant's standard operating procedure.  See id. at 876.  The focus will be not on individual hiring decisions, but on the existence of a pattern or practice of discriminatory decision-making.  Id.  In other words, the liability stage of a pattern or practice class action does not *necessarily* implicate the same factual issues as an individual discrimination lawsuit brought separately by a class member.  See id. at 881.  However, the same cannot be said of the plaintiffs' disparate impact and pattern or practice claims in this case.  The same policies and practices are challenged under both claims.  As a result, overlap of factual issues between the two claims is inevitable.  Because Cooper did not consider the issues presented by this case, it is inapposite.

56

In sum, the existence of factual issues common between the plaintiffs' disparate impact and pattern or practice claims precludes trial of the disparate impact claim in a class action severed from the remaining nonequitable claims in the case. The claims for injunctive relief, declaratory relief, and any equitable or incidental monetary relief cannot be litigated in a class action bench trial (in the same case prior to certification of any aspects of the pattern or practice claim) without running afoul of the Seventh Amendment. See Roscello, 726 F.2d at 221. Nor may they be advanced in a *subsequent* class action without being barred by res judicata and collateral estoppel, see Montana v. United States, 440 U.S. 147, 153 (1979); Nilson v. City of Moss Point, 701 F.2d 556, 559-64 (5th Cir. 1983) (en banc), because all of the common factual issues will already have been decided, or could have been decided, in the prior litigation. The district court, therefore, did not abuse its discretion in denying partial certification in a temporarily severed class action nor in denying class certification on any or all aspects of this case.[24]

---

[24]We end by saying that neither the holdings of the district court nor this court have denied any of the plaintiffs a right to trial on the merits of his or her claims. The district court suggested that it would go forward resolving the claims in this case through the use of consolidated actions. See Celestine, 165 F.R.D. at 471-72. We have encouraged district courts to use consolidation under Fed. R. Civ. P. 42(a) to deal with these types of situations, see, e.g., Woolen v. Surtran Taxicabs, Inc., 684 F.2d 324, 334 (5th Cir. 1982); see also generally In re Fibreboard

57

VIII

In summary, we hold that nonequitable monetary relief may be obtained in a class action certified under Rule 23(b)(2) only if the predominant relief sought is injunctive or declaratory. Claims for such monetary relief predominate unless they are incidental to related claims for injunctive or declaratory relief. Incidental damages are damages that flow directly from liability to the class as a whole on claims forming the basis of the injunctive or declaratory relief. Because the district court adopted the correct standard for certifying class actions under Rule 23(b)(2), and correctly applied that standard in finding that the plaintiffs' claims for compensatory and punitive damages are not incidental damages in this case, it did not abuse its discretion in denying (b)(2) class certification of these claims. Furthermore, because these claims require individualized proof and determinations, the district court did not err in finding that issues common to the proposed class do not predominate over those affecting only individual plaintiffs and that a class action would not be a fair and efficient method for adjudicating these claims. The district

---

Corp., 893 F.2d 706 (5th Cir. 1990), and we approve of the district court's attempt to do so here. We cannot help but observe that, even if Rule 23 was somehow appropriate to address this complex, multi-faceted action, it would hardly serve to provide a more efficient resolution of this case than a series of consolidated actions.

court did not, therefore, abuse its discretion in denying class certification of these claims under Rule 23(b)(3).  Finally, we hold that the Seventh Amendment precludes a partial certification of a class action on the plaintiffs' claims for equitable relief, with the court reserving judgment on whether to certify a class action on the remaining claims until later proceedings.

In accordance with the above-stated reasons, the judgment of the district court is

A F F I R M E D.

ENDRECORD

59

DENNIS, J., Circuit Judge, dissenting:

I respectfully dissent.

The majority incorrectly holds that African Americans who claim to have been harmed by Citgo's alleged unlawful racially discriminatory employment policies and practices cannot bring a class action under Federal Rule of Civil Procedure 23(b)(2) to enforce collectively their rights and remedies afforded for such violations under both the 1991 Civil Rights Act and Title VII of the 1964 Civil Rights Act.

The primary purposes of Title VII are to deter and abolish racial and other discrimination in employment and to make discriminatees whole. By the 1991 Civil Rights Act, Congress expressly intended to further these goals more effectively by affording in a Title VII action limited compensatory and punitive damage remedies to disparate treatment victims. The majority concludes, however, that the legislative intent of the 1991 Civil Rights Act cannot be effectuated in a Rule 23(b)(2) class action.

The majority reaches this conclusion by erroneously interpreting Rule 23(b)(2) as disallowing certification of a class action under that subdivision whenever the plaintiffs seek compensatory or punitive damages for individual members of the class in addition to injunctive and declaratory relief. The

60

majority's preclusive interpretation is built on nothing more than its own assertion that, in effect, the prayer for such damages gives rise to a conclusive or irrebuttable presumption that the final relief sought by the plaintiffs relates exclusively or predominantly to money damages, rather than to the final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

The majority's decision rests on a conception of Rule 23(b)(2) that is irreconcilable with the basic purposes of Rule 23, the text of Rule 23(b)(2), the Advisory Committee Notes on Rule 23(b)(2), the exercise of informed and sound discretion by the district court in deciding whether to certify a class, and Rule 23(b)(2)'s proven effectiveness and unique appropriateness in civil rights cases, especially Title VII actions. Rule 23 plainly limits this court's judicial inventiveness; we have no authority to require a district court to automatically disallow (b)(2) certification simply because a member of the class seeks compensatory or punitive damages in addition to final injunctive relief. Rather, Rule 23 obliges the trial court to conduct a rigorous analysis, often necessarily probing behind the pleadings, before exercising its own broad discretion within the framework of the rule to decide whether to certify a class.

I.

The majority opinion introduces a new interpretation of Rule 23 (b)(2) which provides, in effect, that a class action cannot be certified under that subdivision when the plaintiffs seek individual compensatory or punitive damages in addition to injunctive or declaratory relief under Title VII. That interpretation is based on a circuitous rationale: (i) a claim for monetary relief automatically predominates and defeats certification of a (b)(2) class unless it is "incidental" to requested injunctive or declaratory relief; (ii) "incidental" damages are those that flow directly and automatically from liability to the class as a whole on the claims forming the basis of the injunctive or declaratory relief; (iii) "incidental" damages are those that do not require additional hearings to resolve the merits of each individual's case and that do not introduce new and substantial legal or factual issues or complex individualized determinations; (iv) except that, a request for individualized back pay awards under Title VII may be included without defeating certification of a (b)(2) class.[*]

---

[*] The majority is forced to create an exception to its "incidental" damages rule in order to preserve our case law permitting (b)(2) certifications when both injunctive and monetary relief (back pay) were sought under Title VII. *See, e.g., Pettway v. American Cast Iron Pipe Co.*, 494 F.2d 211 (5th Cir. 1974). Although back pay has often been characterized as an equitable remedy for practical purposes, functionally there is little to distinguish back pay awards from compensatory damages. Both

The majority states that under its rule the district courts have discretion to decide whether monetary damages sought are "incidental." However, the majority's definition of "incidental damages" unquestionably excludes all individual compensatory and punitive damages. Consequently, under the majority's rule a district court cannot certify a (b)(2) class action suit seeking any such damages without committing an abuse of discretion or an error of law. Therefore, the trial court's discretion to determine whether damages are "incidental" is illusory. Because of this formulation, trial courts in this circuit will, in fact, have no

---

require complex individualized determinations, *Johnson v. Goodyear Tire and Rubber Co.*, 491 F.2d 1364, 1375 (5th Cir. 1974) ("There should be a separate determination on an individual basis as to who is entitled to recover[] [back pay] and the amount of such recovery."); *Shipes v. Trinity Indust.*, 987 F.2d 311, 317 (5th Cir.) ("[F]ashioning a class-wide back pay award is exceedingly complex and difficult . . . ."), *cert. denied*, 510 U.S. 991 (1993), of t he sort eschewed by the majority's new "incidental" damages test. Moreover, the equitable characterization of back pay as the only basis for allowing back pay award in a (b)(2) case was explicitly rejected by the court in *Frank v. Bowman Transp.*, 495 F.2d 398, 422 (5th Cir. 1974) ("Even if back pay is considered as equivalent to damages [and not equitable] under Rule 23, in this case back pay is not the exclusive or predominant remedy sought."). Even with the back pay exception, the majority's formulation runs afoul of our precedent which has held that compensatory and punitive damages may be recovered in a (b)(2) class action in situations where they would not be "incidental" as so defined by the majority. *See, e.g.*, *Parker v. Local Union No. 1466*, 642 F.2d 104, 107 (5th Cir. 1981).

63

discretion to certify a (b)(2) class where individual compensatory and punitive damage claims are sought.[**]

A.

The majority's rule absolutely precluding compensatory and punitive damages claims in (b)(2) class actions patently conflicts with or does not demonstrably further the basic purposes served by class action suits. The fundamental aims of class actions are (1) "to promote judicial economy and efficiency by obviating the need for multiple adjudications of the same issues[,]" 5 JAMES WM. MOORE, MOORE'S FEDERAL PRACTICE § 23.02 (3d ed. 1998) (citing *General Tel. Co. Of Southwest v. Falcon*, 457 U.S. 147, 156 (1982) and *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 553 (1974)), (2) "to afford aggrieved persons a remedy if it is not economically feasible to obtain relief through . . . multiple individual damage actions[,]" *id.* (citing *Deposit Guar. Nat. Bank v. Roper*, 445 U.S. 326, 339 (1980); *Amchem Prods., Inc. v. Windsor*, --U.S.--, 117 S. Ct. 2231, 2246 (1997)("the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his

---

[**] For example, the majority opinion states: "Clearly, after *Patterson*, compensatory damages under Title VII and 42 U.S.C. § 1981 are not incidental to class-wide injunctive or declaratory relief for discrimination." slip op. at 29. "[B]eing dependent on non-incidental compensatory damages, punitive damages are also non-incidental[.]"

or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.")(quoting *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997)); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985)), (3) to enhance access to the courts "by spreading litigation costs among numerous litigants with similar claims[,]" *id.* (citing *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 402-403 (1980)), (4) "[to protect] the defendant from inconsistent adjudications[,]" *id.*, and (5) "to ensure . . . that the interests of absentee class members are considered fairly and adequately," *id.* (citing *Hansberry v. Lee*, 311 U.S. 32, 42-43 (1940) and *Baby Neal* ex rel. *Kanter v. Casey*, 43 F.3d 48, 55 (3rd Cir. 1994)).

Rule 23's requirements for class action suits should be interpreted in light of the basic purposes of the rule. *In re A.H. Robins Co.*, 880 F.2d 709, 740 (4th Cir.), *cert. denied*, 493 U.S. 959 (1989); *see also Mace*, 109 F.3d at 344; *Andrews v. Amer. Tel. & Tel. Co.*, 95 F.3d 1014, 1025 (11th Cir. 1996); 5 MOORE, *supra*, at § 23.04.

The majority fails to demonstrate that its rigid bright-line rule will further the basic purposes of Rule 23 class action suits. On the contrary, it is self-evident that the application of such an

inflexible, arbitrary rule frequently will disallow (b)(2) class action suits seeking predominantly final injunctive relief and only secondarily damages, and thus derogate from the class action goals of judicial economy and efficiency; affording aggrieved persons a remedy not otherwise economically feasible; enhancing access to courts by spreading costs; and protecting defendants from inconsistent adjudications.

B.

The majority's rule sharply conflicts with the text, advisory notes and underlying policies of Rule 23(b)(2) in several important respects.

Rule 23(b)(2) provides, in pertinent part, that "[a]n action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition . . . the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole[.]" The rule plainly does not say that a class (b)(2) may not be certified if the parties seeking injunctive relief or corresponding declaratory relief also pray for individual compensatory or punitive damages. *See Parker v. Local Union No. 1466*, 642 F.2d 104, 107 (5th Cir. 1981)("Class certification under Rule 23(b)(2) does not automatically preclude an award of monetary

damages when the primary relief sought is injunctive or declaratory. The rule pointedly refers to injunctive or declaratory relief but does not, in terms, preclude monetary relief.")

The Advisory Committee Notes on Rule 23(b)(2), in pertinent part, state that "[t]his subdivision is intended to reach situations where a party has taken action or refused to take action with respect to a class, and final relief of an injunctive nature or of a corresponding declaratory nature, settling the legality of the behavior with respect to the class as a whole, is appropriate . . . . The subdivision does not extend to cases in which the appropriate final relief relates exclusively or predominantly to money damages." FED. R. CIV. P. 23 advisory committee's note (discussing Subdivision (b)(2) under 1996 Amendments). The advisory note does not state that a Rule (b)(2) class may not extend to cases in which a plaintiff seeks money damages. The advisory exclusion applies only to cases in which (i) the appropriate final relief (ii) relates exclusively or predominantly (iii) to money damages. In other words, if the plaintiffs seek relief of an injunctive nature temporarily or not as the final relief for the whole class but instead seek a final relief relating exclusively or predominantly to money damages, a (b)(2) class would not be appropriate. In fact, a plain reading of the advisory note

clearly indicates that money damages may be sought in a (b)(2) class action along with final injunctive relief so long as money damages are not be the exclusive or predominant relief sought.

Even if one disregards the text of Rule 23 (b)(2) and focuses only on the Advisory Committee Note, the majority's extrapolation of a rule therefrom, arbitrarily barring (b)(2) certification if the plaintiffs seek any compensatory damages to make individual members of the class whole, is unwarranted. The plain language of the note does not support the formulation of such a rule and its sweeping preclusion of certification of all cases involving compensatory or punitive damages conflicts with the specifications and the clear intent and concerns of the drafters of the rule.

The Advisory Committee pointed to, as the outstandingly clear or typical example or archetype of a case eligible for (b)(2) certification, "actions in the civil-rights field where a party is charged with discriminating unlawfully against a class, usually one whose members are incapable of specific enumeration." *Id.* (collecting civil rights cases including *Potts v. Flax*, 313 F.2d 284 (5th Cir. 1963) and *Bailey v. Patterson*, 323 F.2d 201 (5th Cir. 1963), *cert. denied*, 376 U.S. 910 (1964)). In fact, "Rule 23(b)(2) was promulgated . . . essentially as a tool for facilitating civil rights actions." 5 MOORE, *supra*, § 23.43[1][a], at 23-191. Under the majority's bright-line rule, however, no consideration is given

or importance attached to the fact that the case not only qualifies under the text of Rule 23(b)(2), but also is a civil rights action seeking to permanently enjoin unlawful discrimination. *Cf. Jenkins v. United Gas* Corp., 400 F.2d 28, 32-33 (5th Cir. 1968) ("[The claim to remedy class-wide discriminatory employment practices] has extreme importance with heavy overtones of public interest."); *Young v. Pierce*, 544 F. Supp. 1010, 1028 (E.D. Tex. 1982)("[W]hen the relief sought is injunctive relief, the benefits . . . would inure not only to known class, but also to a future class of indefinite size."); Note, *Antidiscrimination Class Actions Under the Federal Rules of Civil Procedure: The Transformation of Rule 23(b)(2)*, 88 Yale L. J. 868, 873 n.32 ("The desirability of an injunction to shield all putative class members against whom the discrimination was by its 'very nature' directed, provided the 'most important' reason for upholding class treatment in the (b)(2) situation.")(citing *Potts v. Flax*, 313 F.2d 284, 289 (5th Cir. 1963) and *Bailey v. Patterson*, 323 F.2d 201, 206-07 (5th Cir. 1963)). Instead, the majority decrees that if compensatory or punitive damages are prayed for, the case is automatically classified as "predominantly" related to money damages and therefore not certifiable under (b)(2). By the same token, the majority's hard and fast rule distorts the meaning of Rule 23(b)(2)

and the Advisory Committee Note so as to reclassify such a civil rights action as a (b)(3) situation, in which "class-action treatment is not as clearly called for as in" (b)(1) or (b)(2) situations. FED. R. CIV. P. 23 advisory committee's note (discussing Subdivision (b)(3)). If civil rights plaintiffs combine their otherwise (b)(2) class-worthy claim for injunctive relief with claims for compensatory or punitive damages, even if the damage claims are small and do not predominate, the rule formulated by the majority would deny (b)(2) class certification.

The Advisory Committee, in stating that the (b)(2) class "does not extend to cases in which the appropriate final relief relates exclusively or predominantly to money damages," most certainly did not have in mind the incongruous meaning derived from the commentary by the majority, *i.e.* an absolute, inflexible rule precluding (b)(2) certification when the plaintiffs seek to recover compensatory or punitive damages regardless of the nature or significance of the class-wide final injunctive relief sought. In referring to a case in which "the appropriate final relief relates exclusively or predominantly to money damages" the Advisory Committee may have intended to exclude situations in which the plaintiffs either do not seek final injunctive relief for the whole class or do so only as a sham to obtain easier certification for what is truly only an action for money damages. Or the committee

70

may have meant for the court to compare the quantity and quality of the injunctive and monetary remedies in the particular case to see which was predominant, a consideration that has been at least suggested by this court, *see Jenkins,* 400 F.2d at 32-33. ("Considering that in this immediate field of labor relations <u>what is small in principal is often larger in principle</u>, [the claim to remedy class-wide discriminatory employment practices] has extreme importance with heavy overtones of public interest."), and yet, would be precluded by the majority's strict no plenary damages rule.***

---

\*\*\*      The latter interpretation of the Advisory Committee's note is also suggested by a court's approach in considering the propriety of its certification of a (b)(2) class action in evaluating an objection to settlement.  In *Stewart v. Rubin*, 948 F.Supp. 1077 (D. D.C. 1996), *aff'd*, No. 96-5377, slip. op. (D.C. Cir. May 22, 1997) (unpublished), involving a class of Treasury Department Special Agents, the court concluded that the equitable relief predominated.  It elaborated:

> Although the compensatory damage award is substantial, $4,025,000, it constitutes an average of less than $16,500 for each member of the class, and no class member is guaranteed any award form the Backpay or Compensatory Damage Funds unless he or she provides evidence of discrimination and resulting damage. Weighed against the possible receipt of $16,500 is each class member's right to participate in the individualized equitable relief procedure, receive promotions, reinstatement, new or adjusted performance evaluations, adjusted personnel records, including awards, lateral changes of assignments, correction or removal of disciplinary action, and a host of other equitable measures. Any one of these equitable remedies could be worth more than $16,500 to a Special Agent for the life of his or her career. Cumulatively, they can make or break a Special

71

The assessment of the value of each remedy sought in a particular class action suit is problematic. However, the majority's no-damage-claim-or-no-certification rule precludes even ballpark estimates of equitable and money damage remedies for purposes of determining whether potential damages predominate or rather are so small individually as to make the final injunctive relief sought more important, valuable, and predominant.

C.

The majority's rule improperly prevents the exercise of informed, sound judicial discretion by a trial court to determine that in a particular Title VII class action suit the positive weight or value of the injunctive or declaratory relief sought is predominant even though compensatory or punitive damages are also claimed. The majority's judicially invented limitation upon the district court's power is contrary to Rule 23, the congressional drafters' and reviewers' intent, and the well-established precedents of the Supreme Court and this court.

Rule 23(b)(2) provides that "[a]n action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition [] the party opposing the class has acted or refused to act on grounds generally applicable to the

Agent's career.
*Id.* at 1092.

class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole[.]" The text of the rule does not contain a predominance requirement or purport to grant a district court the discretion to deny certification if the prerequisites of (a) and (b)(2) are satisfied. The Advisory Committee Note that subdivision (b)(2) "does not extend to cases in which the appropriate final relief relates exclusively or predominantly to money damages" implies an intention to vest the trial court with the discretion to deny certification in such cases. Rule 23(c)(1) provides that "[a]s soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained." Thus, the discretion to determine whether money damages predominate in a particular case, requiring that it not be maintained as a (b)(2) class action, is clearly delegated to the district court as part of its certification function. There is simply no justification for an appellate court to use the Advisory Committee Note as a pretext for formulating a judicial rule that nullifies the district court's legislatively granted authority or discretion in this respect. *Cf.* 1 HEBERT B. NEWBERG & ALBA CONTE, NEWBERG ON CLASS ACTIONS §4.14, at 4-49 (3d ed. 1992) ("No clear standards have or could be developed . . . in this area so pregnant with judicial discretion.") (emphasis added).

The Supreme Court, in *Amchem Products, Inc. v. Windsor*, -- U.S. -- , 117 S. Ct. 2231, 2235 (1997), held that federal courts "lack authority to substitute for Rule 23's certification criteria a standard never adopted by the rulemakers--that if a settlement is 'fair,' then certification is proper." Thus, the majority exceeds the limits of its judicial power by substituting for the certification criteria a rule based on its own definition of terms in the Advisory Committee Note that in effect usurps the district court's legislated authority to perform its certification function. For, as the Supreme Court admonished:

> And, of overriding importance, courts must be mindful that the rule as now composed sets the requirements they are bound to enforce. Federal Rules take effect after an extensive deliberative process involving many reviewers: a Rules Advisory Committee, public commenters, the Judicial Conference, this Court, the Congress. See 28 USC §§ 2073, 2074. The text of a rule thus proposed and reviewed limits judicial inventiveness. Courts are not free to amend a rule outside the process Congress ordered, a process properly tuned to the instruction that rules of procedure "shall not abridge . . . any substantive right." § 2072(b).

*Id.*

Our decisions and those of the Supreme Court have held that the district court, within the bounds of the Federal Rules, has broad discretion to decide whether to allow the maintenance of a

class action; that inherent in that discretion is the district court's duty to rigorously analyze each case to determine whether the certification prerequisites have been satisfied; and that the district court, when necessary, must probe behind the pleadings before coming to rest on the certification question. *General Tel. Co. of S. W. v. Falcon*, 457 U.S. 147, 160-161 (1982); *Gulf Oil Co. v.. Bernard*, 452 U.S. 89, 100 (1981). As this court, in *Castano v. American Tobacco Co.*, 84 F.3d 734, 740 (5th Cir. 1996), recently held:

> A district court must conduct a rigorous analysis of the rule 23 prerequisites before certifying a class. *General Tel. Co. v. Falcon*, 457 U.S. 147, 161, 102 S.Ct. 2364, 2372, 72 L.Ed.2d 740 (1982); *Applewhite v. Reichhold Chems.*, 67 F.3d 571, 573 (5th Cir. 1995). The decision to certify is within the broad discretion of the court, but that discretion must be exercised within the framework of rule 23. *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100, 101 S.Ct. 2193, 2200, 68 L.Ed.2d 693 (1981).

We have found no other circuit court that has adopted a jurisprudential rule completely barring (b)(2) certification when compensatory damages are sought as well as final injunctive relief. The majority cites *Williams v. Owens-Illinois, Inc.*, 665 F.2d 918 (9th Cir.), *cert. denied*, 459 U.S. 971 (1982), as being in accord with its position. But the Ninth Circuit did not adopt such a rule in that case. Rather, it merely affirmed the trial court's

75

exercise of discretion in limiting the issues in a class action to claims for injunctive relief, although the plaintiffs had also prayed for compensatory damages. *Id.* at 928-29. In fact, if the textual prerequisite of Rule 23 (a) and (b)(2) have been satisfied, many courts and leading commentators favor either leaving the trial court's discretion untrammeled or using a variety of flexible and practical approaches that encourage the certification of some type of class even when money damages are sought along with final injunctive relief.[****] 1 NEWBERG, *supra*, § 4.14 (discussing these approaches with approval and collecting cases therein); 7A CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1775, at 470 (2d ed. 1986) ("If the Rule 23(a) prerequisites have been met and injunctive or declaratory relief has been requested, the action usually should be allowed to proceed under subdivision (b)(2).

---

[****] For a sensible approach to certification of civil rights class actions under Subsection (b)(2) when claims for injunctive relief are coupled with individual claims for damages see *Thomas v. Albright*, --- F.3d ---, 1998 WL 135494 (D.C. Cir. 1998). *See also* 1 NEWBERG, *supra*, §4.41, at 4-51 to 52(noting that courts have employed one of four options either (1) limiting the certification to certain issues, (2) certifying the claims for injunctive relief under Subsection(b)(2) and the damage claims under Subsection (b)(3); (3) certifying the entire class under Subsection (b)(2) and reconsidering the certification category if the class is successful at the liability stage; or (4) certifying certain issues and treating other issues as incidental ones to be determined separately after liability to the class has been decided.).

Those aspects of the case not falling within Rule 23(b)(2) should be treated as incidental.").

The rule adopted by the majority in the present case exceeds the bounds of its authority because it usurps the district courts' authority granted by Rule 23 (when a member of a class seeks to maintain a class action under (b)(2) for both final injunctive relief and compensatory or punitive damages) to rigorously analyze the case, probe behind the pleadings if necessary, and exercise its own discretion within the framework of the rules in determining whether the action is to be so maintained.

D.

By adopting an absolute rule against compensatory or punitive damages claims in (b)(2) class actions, the majority ignores the intent of the drafters of Rule 23 that class actions against discriminatory employment practices would be maintained under (b)(2). The majority's rule, contrary to the intent of the drafters and Congress, threatens a drastic curtailment of the use of (b)(2) class actions in the enforcement of Title VII and other civil rights acts.

Courts routinely have certified Title VII class actions under Rule 23(b)(2) on the theory that such suits, by their very nature, are directed at eliminating class-based discrimination. *See, e.g.*, *Kincade v. General Tire and General Motors Corp.*, 635 F.2d 501, 506

& n.6 (5th Cir. 1981).   As the Third Circuit in *Wetzel v. Liberty Mutual Insurance Company*, 508 F.2d 239, 250 (3d. Cir.)(emphasis added), *cert. denied*, 421 U.S. 1011 (1975), observed:

> [A] Title VII suit against discriminatory hiring and promotion policies is necessarily a suit to end discrimination because of a common class characteristic, [such as race].  *Bowe v. Colgate-Palmolive Co.*, 416 F.2d 711, 719 (7th Cir. 1969);  *Oatis v. Crown Zellerbach Corp.*, 398 F.2d 496, 499 (5th Cir. 1968).  The conduct of the employer is actionable "on grounds generally applicable to the class," and the relief sought is "relief with respect to the class as a whole."  <u>The class, all sharing a common characteristic subjected to discrimination, is cohesive as to the claims alleged in the complaint.  Thus, a Title VII action is usually particularly fit for (b)(2) treatment, and the drafters of Rule 23 specifically contemplated that suits against discriminatory hiring and promotion policies would be appropriately maintained under (b)(2).</u>  Advisory Committee, supra at 102.

This court and others have held that a (b)(2) class is appropriate in a Title VII suit where both final injunctive and monetary relief are granted.  *See Franks v. Bowman Transp. Co.*, 495

78

F.2d 398, 422 (5th Cir. 1974); *Pettway v. American Cast Iron Pipe Co.*, 494 F.2d 211, 257 (5th Cir. 1974); *Johnson v. Goodyear Tire & Rubber Co.*, 491 F.2d 1364, 1375 (5th Cir 1974); *Robinson v. Lorillard Corp.*, 444 F.2d 791, 801-802 (4th Cir. 1971); *Bowe,* 416 F.2d at 720. The basic nature of a Title VII suit has not been altered merely because the plaintiff may also pray for compensatory or punitive damages, if money damages are not the exclusive or dominant relief sought.

After the 1991 Civil Rights Act the thrust of a Title VII action continues to be society's interest in eliminating discrimination and the individual's interest in being made whole. H.R. Rep. No. 102-40(I), at 64-65, *reprinted in* 1991 U.S.C.C.A.N. 602-03. Title VII plaintiffs may still seek extensive and systematic injunctive relief for claims that arise from a system of employment action that has been uniformly imposed based on a characteristic common to all class members, such as race. Therefore, "[t]he conduct of the employer is still answerable 'on grounds generally applicable to the class,' and the primary relief sought is still 'relief with respect to the class as a whole,'" *Wetzel*, 508 F.2d at 251, even when nonpredominant money damages are sought. *Cf. Thomas v. Albright*, --- F.3d ---, 1998 WL 135494, at *8 (D.C. Cir. March 27, 1998) (assumption of cohesiveness underlying certification of a (b)(2) class is not necessarily destroyed when

79

claims for injunctive relief are coupled with individual claims for monetary damages).

As this court stated in *Pettway v. American Cast Iron Pipe Co.*, 494 F.2d 211, 257 (5th Cir. 1974):

> All that need be determined is that conduct of the party opposing the class is such as makes such equitable relief appropriate. This is no limitation on the power of the court to grant other relief to the established class, especially where it is required by Title VII[.]

Citgo's employment practices and policies were alleged to be such that final injunctive relief was appropriate. The text of Rule 23 (b)(2) requires nothing more. The nature of those alleged racially discriminatory policies, and the nature of the class opposing those policies does not change merely because the plaintiffs also seek monetary damages if they are not the exclusive or predominant relief sought. *Cf. Wetzel*, 508 F.2d at 251.

## II.

Because I disagree fundamentally with the path followed by the majority and the district court in interpreting and applying Rule 23(b)(2), I see no need to address the particular Seventh Amendment problems that might arise under the application of their erroneous interpretation of the rule. If, upon remand, the district court were to certify a class action after applying the correct

principles of law, care must be taken to accommodate the parties'
rights to a jury trial of the compensatory and punitive damages
issues with the court's trial of the injunctive and declaratory
relief issues.  Under the circumstances of a particular case, this
task may be difficult, but it is by no means impossible in every
instance when proper safeguards are used.

Title VII class actions for disparate treatment have
traditionally been conducted in two stages.  In *Baxter v. Savannah
Sugar Refining Corp.*, 495 F.2d 437, 443-44 (5th Cir. 1974), this
court explained the bifurcation of a Title VII class action as
follows:

> A Title VII class action presents a bifurcated burden of
> proof problem.  Initially, it is incumbent on the class
> to establish that an employer's employment practices have
> resulted in cognizable deprivations to it as a class.  At
> that juncture of the litigation, it is unnecessarily
> complicating and cumbersome to compel any particular
> discriminatee to prove class coverage by showing personal
> monetary loss.  What is necessary to establish liability
> is evidence that the *class* of black employees has
> suffered from the policies and practices of the
> particular employer.  Assuming that the class does
> establish invidious treatment, the court should then

81

> properly proceed to resolve whether a particular employee is in fact a member of the covered class, has suffered financial loss, and thus entitled to back pay or other appropriate relief.

*Id.* at 443-44. *See International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 360 (1977); *Franks v. Bowman Transp.*, 424 U.S. 747, 772 (1976).

This approach allows the court and the jury to focus on the employment practices of the employer as they affect the defendant's liability to the class during the liability stage. *Cf*. 6 Newberg, *supra*, § 24.122, n. 1000 (citing *Swint v. Pullman-Standard*, 539 F.2d 77 (5th Cir. 1976); *United States v. United States Steel Corp.*, 520 F.2d 1043 (5th Cir. 1976)). If the class does establish to the satisfaction of the jury that policies or practices of discrimination exist, the jury may then resolve in a stage II proceeding whether individual class members are entitled to receive compensatory or punitive damages and the quantum of any award. Cf. Id.

Because equitable relief and legal claims may depend on common issues of fact, the court must allow the jury to determine in stage I the issue of legal liability to the class before the court determines whether the class is entitled to injunctive or declaratory relief. *See Dairy Queen v. Wood*, 369 U.S. 469, 479-480

(1962).  Also, in stage II, the court must clearly instruct the jury that it is not to revisit the issues decided by the jury in the first phase as to whether the defendant had an employment policy of unlawful discrimination but must decide only the issues of whether individual plaintiffs are entitled to compensatory or punitive damages.  *See Gasoline Products Co., Inc. v. Champlin Refining Co.,* 283 U.S. 494 (1931)

Because the issue of whether an individual employee has been damaged by the employer's intentional disciminatory conduct is separate and distinct from the issue of whether the employer had an unlawful discriminatory practice or policy so that, with adequate instructions and guidance by the court, a trial of it alone may be had without injustice, the Seventh Amendment does not prohibit the separate jury trials of those issues. *See id.*  That is, the issues may be divided between separate trials if done "in such a way that the same issue is [not] reexamined by different juries."  *In re Rhone-Poulenc*, 51 F.3d 1293, 1303 (7th Cir. 1995);  *see also Castano v. American Tobacco Co.*, 84 F.3d 734, 750 (5th Cir. 1996)("Thus, Constitution allows bifurcation of issues that are so separable that the second jury will not be called upon to reconsider findings of fact by the first."); *Alabama v. Blue Bird Body Co.*, 573 F.2d 309, 318 (5th Cir. 1978) ("[I]nherent in the Seventh Amendment guarantee of a trial by jury is the general right

of a litigant to have only one jury pass on a common issue . . .
").

In other words, the bifurcated phases of a Title VII class action contemplate separate and distinct issues. The first stage of a Title VII class action focuses exclusively on class-wide claims, *Price Waterhouse v. Hopkins*, 490 U.S. 228, 245 n.10 (The focus in Stage I is "'not [] on [the] individual hiring decisions, but on a pattern of discriminatory descisionmaking.'") (quoting *Cooper v. Federal Reserve Bank of Richmond*, 467 U.S. 867, 876 (1984)), whereas the second stage focuses on individual claims.

At the first stage the *class* must establish "that discrimination against a protected group was essentially the employer's 'standard practice,' there has been harm to the group and injunctive relief is appropriate." *Id.* at 266 (O'Connor, J., concurring); *see also United States Steel Corp.*, 520 F.2d at 1053; 6 NEWBERG, *supra*, § 24.123. Once it has been shown that the employer maintained a policy or practice that unlawfully discriminates in the first stage, that issue will not be revisited in the second stage. *See International Brotherhood of Teamsters*, 431 U.S. at 361-62. Rather, at the second stage the issue is whether individual employment decisions were made pursuant to any such procedure or policy. *Id.* at 362; MANUAL FOR COMPLEX LITIGATION, THIRD §33.54 (1995)("Individual [class members] . . . are permitted

84

to present their individual claims of injury."). Therefore, the issues to be decided in the two stages -- class-wide liability at Stage I and individual claims at Stage II -- are separate and distinct and the second jury will not reexamine issues decided by the first jury. Nor does the fact that some of the same evidence may be presented in both phases make the bifurcation unconstitutional, for the "prohibition is not against having two juries review the same evidence, but rather against having two juries decide the same essential issues." *In re Innotron Diagnostics*, 800 F.2d 1077, 1086 (Fed. Cir. 1986); *see also In re Paoli R.R. Yard*, 113 F.3d 444, 452-53 n.5 (3d Cir. 1997).

In summary, I respectfully dissent from the majority opinion because it adopts an unauthorized and erroneous interpretation of Rule 23(b)(2), affirms the district court decision based on the same error of law, and raises constitutional questions that would not be encountered under a correct interpretation and application of the rule.