E. GRADY JOLLY, Circuit Judge,
joined by JONES, SMITH, CLEMENT, OWEN, and ELROD, Circuit Judges,
dissenting from the denial of rehearing en banc:
In this case of first impression in our circuit, the EEOC seeks to bring a “pattern or practice” case under both § 706 and § 707 of Title VII of the Civil Rights Act, as' amended in 1991, asserting the violation of the rights of 50,000 applicants, and the entitlement of each to individualized compensatory and punitive damages. With collegial respect, the panel opinion circumvents the Supreme Court precedent in Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 131 S.Ct. 2541, 180 L.Ed.2d 374 (2011), dismisses our precedent in Allison v. Citgo Petroleum Corp., 151 F.3d 402 (5th Cir. 1998), downplays critical manageability concerns, brushes away the complications of the Seventh Amendment, and excuses the statutory limitations of § 707—resulting in an expansion of the litigation powers of the EEOC beyond the precedents of this Court and the Act. Our Court, in a tie vote, has denied en banc consideration. I respectfully dissent.[1]
I.
First, what this dispute with the panel opinion is not about. The dispute does not challenge the right of the EEOC to bring this mass “pattern or practice” suit under § 707. And it casts no doubt on the panel’s finding that the EEOC’s conciliation efforts were sufficient to meet the administrative prerequisites for bringing such a § 707 “pattern or practice” action. What is challenged is that the EEOC may maintain an action in this “pattern or practice” case under both or either § 706 or § 707 in order to claim individualized punitive and compensatory damages for each of the 50,-000 persons making up the mass.
II.
The few relevant background facts to this appeal are as follows. As noted, there are around 50,000 alleged individual discri-minatees on whose behalf the EEOC seeks to obtain compensatory and punitive damages. The “50,000” number is asserted in shotgun fashion, with no development or refinement of who or where the individuals are. Fifty thousand African-Americans and Hispanics unsuccessfully applied to Bass Pro nationwide over a ten-year period, the EEOC reasons, and thus, automatically, 50,000 people are said to be victims of individualized injuries, entitled to compensatory and punitive damages in one mass action.[2]
*218 The EEOC, after a three-year investigation, could identify zero discriminatees or even potential discriminatees. Upon being pressed by the district court, the EEOC identified about 100, and later, about 200, of the 50,000 mass. In the course of the investigation, Bass Pro produced some 230,000 pages of documents. The EEOC conducted extensive interviews. Still, the EEOC identified only 200 discriminatees to the district court.
The district court, after halts and starts, allowed the EEOC to file a “pattern or practice” claim on behalf of the 50,000 claimants under § 706 of the Civil Rights Act seeking individualized compensatory and punitive damages. This interlocutory appeal followed. The panel affirmed.
III.
The Civil Rights Act of 1964 provides two methods pursuant to which the EEOC may file suit to remedy violations of the Act. First, the EEOC may bring an action under § 706 of the Act. In a § 706 suit, the Commission must first file a charge of discrimination on behalf of an individual (or individuals) and attempt to conciliate the dispute. If it is unable to do so, the Commission may proceed to file a civil action. See 42 U.S.C. § 2000e-5(f)(l).[3] Second, the EEOC may bring a suit under § 707 of the Act. In a § 707 suit, the Commission, after conciliation attempts, may bring a suit against an entity that it believes has engaged in a “pattern or practice” of discrimination. See 42 U.S.C. § 2000e-6.[4] Importantly, § 707 contains the words “pattern or practice of [discrimination]”; § 706 does not. And, importantly, in 1991, Congress amended § 706 to allow for compensatory and punitive damages, and the correspondent right to a jury trial. See 42 U.S.C. § 1981a(a)(l). Congress did not correspondingly amend § 707, which, by contrast, only provides for equitable relief when the EEOC is seeking to represent a mass.
IV.
This appeal presents a case of first impression in this circuit.[5] The EEOC, for *219 the first time, attempts to bring a mass “pattern or practice” claim pursuing the remedies specific to § 706: individual punitive and compensatory damages.
To the simple, underlying point of the several following pages: this “pattern or practice” case cannot be brought under § 706 or § 707 as to provide individualized compensatory and punitive damages for a mass of 50,000 persons. This is so for three reasons. First, the plain language and legislative history of the Civil Rights Act forbid § 706 “pattern or practice” suits, and the panel’s contrary holding renders § 707 of the Act a meaningless appendage to Title VII and hence superfluous. Second, allowing pattern-or-practice suits for individualized compensatory and punitive damages poses insurmountable manageability concerns; our Court and the Supreme Court have addressed these concerns before and rejected such suits. Third, allowing pattern-or-practice suits for individualized compensatory and punitive damages for the 50,000 persons necessarily runs afoul of the Seventh Amendment; our Court has addressed these concerns before and held that such suits have prohibitive constitutional problems. This dissent addresses each of these flaws in the-panel opinion in turn.
A.
First, the panel’s opinion gives a blind pass to Title VII’s statutory framework. In doing so, the panel renders § 707 meaningless and superfluous; the panel merges the two statutes, holding specifically that “the EEOC’s Section 706 claim is a pattern or practice suit.” Equal Employment Opportunity Commission v. Bass Pro Outdoor World, LLC, 826 F.3d 791, 805 (5th Cir.2016). The two statutes are reborn as one by the stroke of a judicial pen.
This boldness relies heavily on the Supreme Court’s holding in General Telephone Co. of the Nw. v. Equal Employment Opportunity Comm’n, 446 U.S. 318, 323, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980), which held that the EEOC may bring a mass litigation without being subject to Rule 23’s requirements. The panel relies on General Telephone’s unwillingness “to subject § 706(f)(1) actions to requirements that might disable the enforcement agency from advancing the public interest in the manner and to the extent contemplated by the statute,” Bass Pro, 826 F.3d at 800 (citations and quotations omitted), to conclude that the panel must allow the EEOC to pursue a “pattern or practice” action using the Teamsters framework[6] under § 706 for compensatory and punitive damages.
*220 But both General Telephone and Teamsters were decided prior to the 1991 amendments to the Act. In 1980, individualized compensatory and punitive damages—and hence jury trials—were wholly unavailable to Title YII claimants, who could only claim equitable relief. The panel argues that Congress must have intended to do what plainly it did not do: incorporate these changes into both § 706 and § 707 because, according to the panel, Congress was “presumed to be aware of’ the judicial interpretation, see Bass Pro, 826 F.3d at 800 (citations and quotations omitted), that is, that the Supreme Court, in General Telephone, had allowed a § 706 mass litigation to proceed without requiring Rule 23 certification. But neither Teamsters nor General Telephone gave any thought at all to the proper evidentia-ry framework for “pattern or practice” suits involving jury trials and punitive and compensatory damages.
The far more reliable reading of § 707 is that the “off-hand omission” urged by the panel was an intentional and intelligent choice. The legislative history of the 1991 amendments suggests that Congress did not envision the outcome that the panel suggests, and it expected the EEOC to continue, as it always had, pursuing “pattern or practice” claims using the equitable remedies available under § 707.[7] As Senator Robb stated in support of the amendments, “[t]he damages section [of § 706] applies to individual cases of intentional discrimination—where the statistical makeup of the workforce is irrelevant.” 137 Cong. Rec. S15445-02 (daily ed. Oct. 30, 1991) (statement of Sen. Robb). By necessary implication, in pattern-or-practice claims, where statistical makeup of the workforce is relevant, equitable remedies remain the statutorily appropriate relief.[8] See also Brief of Amici Curiae Retail Litigation Center, Inc. and Chamber of Commerce of the United States, 2015 WL 3958049 at *10-12 (explaining legislative history of the 1991 amendments). But the panel opinion slides past the statutory language and Congressional intent; the panel is satisfied that because “Congress did not prohibit the EEOC from bringing pattern or practice suits under Section 706,” Bass Pro, 826 F.3d at 800 (emphasis added), it must allow it to do so. In other words, creating a canon of statutory construction, the panel opinion concludes that any conduct or procedural process not specifically addressed in a statutory provision becomes a right afforded by that provision.
Section 707, however, must be afforded some meaning.[9] But under the panel’s *221 holding, the EEOC has obviated the need for § 707; it can achieve the same result as well as punitive and compensatory damages by bringing a § 706 claim. Still, the panel advances the notion (in a footnote) that § 707 is at least not technically superfluous because private individuals may intervene in a § 706 suit, and because the EEOC may request a three-judge panel in a § 707 suit. See Bass Pro, 826 F.3d at 800 n. 49. Respectfully, it is unrealistic that the EEOC would choose such inconsequential procedural technicalities under § 707, that is, excluding private intervenors and seeking a three-judge panel, to the exclusion of seeking compensatory and punitive damages for victims of discrimination under § 706. In short, the panel opinion will serve as the elegy for § 707.
To be sure, the panel itself acknowledges the canon of statutory construction forbidding rendering a statute superfluous, see Bass Pro, 826 F.3d at 800 n. 49 (noting the “longstanding canon of statutory construction that terms in a statute should not be considered so as to render any provision of that statute meaningless or superfluous”) (citations and quotations omitted) (emphasis added); see also TRW Inc. v. Andrews, 534 U.S. 19, 29, 122 S.Ct. 441, 151 L.Ed.2d 339 (2001) (declining to interpret statute in a way that would “in practical effect” render a provision “superfluous in all but the most unusual circumstances.”). Yet the panel does not see itself in the mirror. Indeed, the panel’s own words reflect its transgression of this rule of statutory construction when it holds that the “EEOC’s Section 706 claim is a pattern or practice suit,” 826 F.3d at 805, and when it chastises Bass Pro for “assuming] that the EEOC’s Section 706 claims are distinct from its pattern or practice claims.” Id. Surely, Congress, its legislative enactments, and statutory construction deserve some respect. Compensatory and punitive damages were actually, in fact, enacted in § 706 claims but actually, in fact, not enacted in § 707 pattern-or-practice claims. See Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 174, 129 S.Ct. 2343, 174 L.Ed.2d 119 (2009) (“When Congress amends one statutory provision but not another, it is presumed to have acted intentionally.”).
That Congress enacted the right to damages in § 706 suits but not § 707 suits demonstrates that Congress understood that its provisions for punitive and compensatory damages were not designed for mass “pattern or practice” cases, certainly not those involving 50,000 unnamed plaintiffs. The statute and its legislative history are powerful evidence that Congress expected the EEOC to bring mass “pattern or practice” claims under § 707, not § 706. And it expected the EEOC to bring mass “pattern or practice” claims for equitable, not legal, relief.
B.
Second, the panel’s holding poses manageability concerns of such a magnitude that our precedent and Supreme Court precedent have rejected cases that, like this one, seek individualized punitive and compensatory damages for a mass where the due process and Seventh Amendment concerns are overwhelming.
We have reasoned that individual jury trials for compensatory and punitive damages are not a realistic choice in mass actions. In Allison, 151 F.3d at 410, we explained that “[b]y injecting jury trials into the Title VII mix, the 1991 Act introduced, in the context of class actions, potential manageability problems with both practical and legal, indeed constitutional, implications.” Accordingly, we recognized *222 that private plaintiffs could not seek individualized punitive or compensatory damages in a mass action, such as this one. Id. at 418, 420. Similar due process and practicality concerns guided the Supreme Court’s decision in Wal-Mart. See Wal-Mart, 564 U.S. at 367, 131 S.Ct. 2541 (“[A] class cannot be certified on the premise that Wal-Mart will not be entitled to litigate its statutory defenses to individual claims.”) (emphasis added).
Yet the panel confines Allison to a footnote, and summarily says such reasoning only applies to trial of Rule 23 cases. Bass Pro, 826 F.3d at 802 n. 61. But Allison was not concerned only with the strictures of Rule 23. It addressed logistical concerns, the same that are present in any mass litigation involving damages tied to the different individual personal injuries of hundreds or thousands of persons (here, 50,000). Allison discussed these issues at length, addressing serious concerns with, among other things, the very subject now at issue—a mass litigation for punitive and compensatory damages tried in front of juries through the Teamsters framework. See, e.g., Allison, 151 F.3d at 419 (“The predominance of individual-specific issues relating to the plaintiffs’ claims for compensatory and punitive damages in turn detracts from the superiority of the class action device in resolving these claims”); id. (“These manageability problems are exacerbated by the fact that this action must be tried to a jury and involves more than a thousand potential plaintiffs”). These concerns of due process and practicality guided the Supreme Court’s decision to deny a mass remedy in Wal-Mart. See Wal-Mart, 564 U.S. at 367, 131 S.Ct. 2541. But the panel dismisses such concerns with a paean to the “able district court.” Bass Pro, 826 F.3d at 803.
When faced with the prospect that its opinion could lead to many years of unmanageable litigation, the panel suggests that the parties would settle their claims. See Bass Pro, 826 F.3d at 803. Such forced settlement, however, is precisely the sort of rationale that we have rejected. See Allison, 151 F.3d at 422 n. 17 (“Settlements should reflect the relative merits of the parties’ claims, not a surrender to the vageries of an utterly unpredictable and burdensome litigation procedure.”); Castano v. Am. Tobacco Co., 84 F.3d 734, 746 & n. 22 (5th Cir. 1996) (describing class settlements not based on the relative merits but forced by risk and uncertainty as “judicial blackmail” and collecting authority from other circuits).
In sum, the panel’s opinion plainly disregards the precedents of both Allison and Wal-Mart because both this Court and the Supreme Court have held that the clear manageability problems constitute practical barriers to such mass tort actions.
C.
Third, the panel’s holding compounds the manageability concerns by creating a framework that necessarily runs afoul of the Seventh Amendment.
The Seventh Amendment provides:
In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise reexamined in any Court of the United States, than according to the rules of the common law.
U.S. Const. Amend. VII (emphasis supplied). ' In other words, the amendment guarantees every litigant, including Bass Pro, the right to defend itself in jury trials against claims of damages.[10] It further *223 guarantees, however, that one jury will never reexamine the findings of another. These two rules together render it impossible to implement the Teamsters framework using separate juries for the Stage I and Stage II proceedings, as suggested by the panel opinion. The Stage II juries— again, l/50th of the alleged discriminatees would amount to 1,000 trials—would inevitably and necessarily reconsider the Stage I jury’s findings in their assessment of the employer’s defenses that it did not act intentionally with respect to a given employee (as to compensatory injury and amount of damages) and/or with malice or reckless indifference (as to punitive injury and amount of damages). We recognized this constitutional impasse in Allison. See 151 F.3d at 420 (“[The bifurcated proceedings] in turn increased the probability that successive juries would pass on issues decided by prior ones, introducing potential Seventh Amendment problems.”). Based on the constitutionality and manageability concerns, we concluded that a private litigant could not bring a class action in a Teamsters “pattern or practice” suit for individualized legal damages using jury trials. Id. Again, the only difference in the Seventh Amendment concern between this case and Allison is that the plaintiff is the EEOC, not a private plaintiff. But, as explained, that does not make Allison’s holding and reasoning any less forceful or precedential with respect to Seventh Amendment and manageability concerns in cases requiring a two-jury process.
The panel’s attempts to grapple with the Seventh Amendment and other manageability concerns—which, in an idiom of understatement, it describes as “[not] fanciful,” Bass Pro, 826 F.3d at 802—are ambivalent. The panel declines to dive deep into the practical, legal, and constitutional problems with the EEOC’s claim, instead summarily stating that Rule 49(b) will provide the district court with all the tools it needs to sort out these insurmountable manageability problems. Indeed, the panel’s best justification for its conclusion that the Seventh Amendment is no barrier to the breadth of the EEOC’s case relies on the wings of hope: it would not be “categorically impossible” to manage. Id. at 802 (citations and quotations omitted).
Turning to the Rule 49 suggestion, as it relates to punitive damages, the panel suggests that the Teamsters Stage I jury assess liability for punitive damages by special interrogatory, asking if the defendant engaged in a pattern or practice of discrimination with “malice or reckless indifference.” Id. at 802. But the rule established in Allison is that “[p]unitive damages cannot be assessed merely upon a finding that the defendant engaged in a pattern or practice of discrimination.” Allison, 151 F.3d at 417. Thus in “pattern or practice” cases, “punitive damages must be determined after proof of liability to individual plaintiffs at the second stage of a pattern or practice case, not upon the mere finding of general liability to the class at the first stage.” Id. at 418. Further, the panel does not explain how the second jury is to realistically determine an individual’s punitive damages award without reconsidering the relevant Stage I jury’s findings.[11] Punitive damages, after *224 all, “must be reasonably related to the reprehensibility of the defendant’s conduct.” Id. at 417; see also Smith v. Texaco, Inc., 263 F.3d 394, 415 (5th Cir. 2001), opinion withdrawn after settlement, 281 F.3d 477 (5th Cir. 2002) (“To meet the requirements of the Seventh Amendment, one jury may have to hear all the issues regarding the pattern and practice claim. This same jury would have to determine the quantum of compensatory and punitive damages.”); Hardin v. Caterpillar, Inc., 227 F.3d 268, 272 (5th Cir. 2000) (“A jury deciding whether to award punitive damages and their amount responds to the evidence of intentional acts essential here to the underlying finding of liability. But intentional acts span a range of intensity, purpose, and foreseeability, a range that oscillates with the perceived level of emotional injury and its appropriate compensation. ... We are persuaded of the practical inseparability of the issues of intent, of damages for emotional injury, and of punitive damages in this [employment discrimination] case.”).
As to compensatory damages, the panel seems to realize it is stepping into a morass, saying that “compensatory damages may prove more difficult [than punitive damages] to administer.” Bass Pro, 826 F.3d at 803. Indeed, the panel appears to make hardly a minimal attempt to overcome the constitutionality and manageability concerns impregnated within individualized claims of compensatory damages, saying that “bifurcation under Teamsters may struggle here to slice liability and damage.” Id. The bottom line resolution that the panel opinion suggests is that the parties will just have to give up and settle the case. See id. (“As these constraints take hold in the pretrial process, the EEOC may conclude that its obligation to enforce Title VII is best discharged by not pursuing in this hiring case the relatively nuanced and elusive compensatory damages. At the same time, Bass Pro may decide that its interests are best served by moderating any exposure it may face by constructing workable management processes it would not otherwise be compelled to abide. The full bite of these constraints is not a decision that this-court, remote from engagement and effectual record, ought now make.”). One could read in these words of the panel opinion that the only outcome of its decision is not litigation, nor a merits decision, but a settlement forced by the impossibility of applying the panel’s decision to the facts of this case with the likely result that either the company is extorted, or the true discrimi-natees are shortchanged, or both.[12]
*225 In sum, the cauldron of problems created by the panel opinion is really not its problem, but that of the “able district court.” 826 F.3d at 803. But under the panel’s decision, the “able district court” is left with only reassuring generalities, a few overly broad suggestions, a suggestion of judicially compelled settlement—which we specifically condemned in Allison, 151 F.3d at 422 n. 17—and an undertone of “Trial by Formula”—which the Supreme Court specifically condemned in Wal-Mart, 564 U.S. at 367,131 S.Ct. 2541.
V.
I respectfully submit that the panel opinion is in conflict with decisions of this Court and the United States Supreme Court and that en banc consideration is necessary to resolve these conflicts. I regret that a majority of this Court failed to vote for en banc consideration, and therefore respectfully dissent from denial of en banc review.

. The panel has found it necessary to bolster its opinion with sixteen pages of dicta in response to this dissent. This dissent is only to the panel opinion, the only precedent at issue. I do note, however, that the response seems unusually defensive to a challenge of the merits of the underlying opinion.

. The 50,000 number is not hyperbole. The EEOC specifically estimated that it believed there were more than 50,000 unsuccessful Black and Hispanic applicants between 2005 and 2012, and argued, correctly, that "all Black and Hispanic unsuccessful applicants would be presumed victims, and would be the *218 subject of [Teamsters] Stage II proceedings concerning relief.” And, as the EEOC acknowledges, there is no reason for it to attempt to identify all of the individual class members it intends to bring to trial until Stage II of the litigation. See Appellee's Brief, 2015 WL 5112409 at *38 ("The Commission does not dispute its obligation to name individual victims for whom it seeks compensatory damages at the relief stage.”).

. The Act provides, in relevant part:
If within thirty days after a charge is filed with the Commission ... the Commission has been unable to secure from the respondent a conciliation agreement acceptable to the Commission,- the Commission may bring a civil action against any respondent not a government, governmental agency, or political subdivision named in the charge. 42 U.S.C. § 2000e-5(f)(l).

. The Act provides, in relevant part:
Whenever the Attorney General has reasonable cause to believe that any person or group of persons is engaged in a pattern or practice of resistance to the full enjoyment of any of the rights secured by this subchap-ter, and that the pattern or practice is of such a nature and is intended to deny the full exercise of the rights herein described, the Attorney General may bring a civil action in the appropriate district court of the United States ...
All such actions shall be conducted in accordance with the procedures set forth in [§ 706] of this title.
42 U.S.C. § 2000e-6 (emphasis added). Note that the provision was amended to transfer the functions originally assigned to the Attorney General, namely, filing pattern- or-practice suits, to the EEOC. See 42 U.S.C. §§ 2000e-6(c), (d), & (e).

.Only one other circuit appears to have squarely addressed the issue. In Serrano v. Cintas Corp., 699 F.3d 884 (6th Cir. 2012), the *219 Sixth Circuit, like the panel, held that the EEOC could bring a § 706 "pattern or practice” suit seeking compensatory and punitive damages. The Sixth Circuit, however, wholly failed to consider the critical manageability and Seventh Amendment concerns raised by its decision.

. In International Brotherhood of Teamsters v. United States, 431 U.S. 324, 358-62, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977), the Court clarified and explained the burden-shifting framework that applies in "pattern or practice” cases. Under this “Teamsters” framework, the plaintiff (here, the EEOC) has the initial burden to prove that the defendant engaged in a pattern or practice of discrimination; the burden then shifts to the defendant to prove, with respect to each individual class member, that equitable relief should be denied because it did not act with discriminatory motives in taking the adverse employment action. See Allison, 151 F.3d at 409. These proceedings are generally bifurcated; the EEOC first attempts to meet its initial burden and, if it does, separate proceedings determine the scope of relief for each affected individual. Id. at 409-10. Teamsters was decided when EEOC claims were tried by a court, not a jury, and only equitable relief, e.g., backpay, reinstatement, hiring, etc., was available.

. Compare 42 U.S.C. § 2000e-6 ("Section 707”) (explicitly providing for remedies against those "engaged in a pattern or practice of resistance to the full enjoyment of any of the rights secured by this subchapter”), with 42 U.S.C. § 2000e-5(f)(l) ("Section 706”) (containing no such language). Section 706 contains not one word suggesting that it is a proper place for a “pattern or practice” claim under the Teamsters framework.

. Such a construction is entirely consistent with the holdings of Teamsters and General Telephone, both of which concerned only equitable remedies.

. Indeed, the notion that § 706 and § 707 are dichotomous with respect to suits brought by the EEOC is hardly a novel proposition. See, e.g., E.E.O.C. v. Shell Oil Co., 466 U.S. 54, 62, 104 S.Ct. 1621, 80 L.Ed.2d 41 (1984) ("A Commissioner may file a charge in either of two situations. First, when a victim of discrimination is reluctant to file a charge himself because of fear of retaliation, a Commissioner may file a charge on behalf of the victim. [42 U.S.C. § 2000e-5 ('Section 706’) ]. Second, when a Commissioner has reason to think that an employer has engaged in a 'pattern or practice’ of discriminatory conduct, he may file a charge on his own initiative. § 2000e-6(e) [‘Section 707’].”); Scarlett v. Seaboard Coast Line R. Co., 676 F.2d 1043, 1053 (5th Cir. 1982) (recognizing Teamsters framework as applicable in " 'pattern and practice' *221 suit[s] by the government under section 707” and in "private class action[s]”).

. Recall again that it was not until 1991— well after both Teamsters and General Tele *223 phone had been decided—that Congress made compensatory and punitive damages available in any Title VII action. Before that, only equitable relief was available, and no jury trial was necessary.

. A hypothetical highlights why Stage I jury findings of malice/recklessness will inevitably be up for review or even rejection when it comes to any subsequent plaintiff's trial for punitive damages. Suppose plaintiff Doe was denied hiring at a Bass Pro shop and became a member of EEOC's "class.” A Stage I juty has found pattern/practice liability and malice/recklessness with respect to racial hiring. *224 Doe seeks compensatory and punitive damages. Bass Pro asserts he was not hired,.not because of the illegal pattern but because he had never held a fishing rod and they were hiring people to sell expensive rods at that store. Doe admits his lack of experience, but says they also snickered at him and his "ethnic” clothing. Jury finds minimum compensatory damages and no punitive damages. Is this consistent with the Stage I findings, and did the jury not have to revisit those findings, contrary to the Seventh Amendment?

. In the response to this dissent, the panel appears to have backed away from its suggestion that compensatory damages may be managed under the Teamsters framework. Instead, it speculates that the EEOC will simply abandon its claim to compensatory damages, content to seek only punitive damages and back-pay. It then suggests, without citation to any authority, that the single, unbifurcated jury may suggest a "damages multiplier” as its punitive damages award, and that this formu-. la-based punitive damages award will be applied based on the judge's later determination of a backpay award. This approach clearly transgresses the Seventh Amendment. A jury may not delegate its findings on punitive damages to the judge, subject by formula to his determination on backpay; Bass Pro has the constitutional right to have a jury determine the actual amount of any award of punitive damages. See Jones v. United Parcel Serv., *225 Inc., 674 F.3d 1187, 1202-06 (10th Cir. 2012) (reasoning that “the Seventh Amendment protects [the] right to have a jury determine the amount of a punitive damage award”). Nor may Bass Pro be subject to a "Trial by Formula,” see Wal-Mart, 564 U.S. at 367, 131 S.Ct. 2541, wholly unable to present defenses to punitive damages with .respect to each individual claimant. Indeed, Allison specifically rejected such an approach: "punitive damages are also non-incidental.—requiring proof of how discrimination was inflicted on each plaintiff, introducing new and substantial legal and factual issues, and not being capable of computation by reference to objective standards.” Allison, 151 F.3d at 418 (emphasis added).